(No. 21569.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HERBERT F. BUZAN, Plaintiff in Error.

*Opinion filed February 23, 1933—Rehearing denied April 6, 1933.*

Kramer, Campbell, Costello & Wiechert, and John C. Roberts, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, Clarence T. Smith, State's Attorney, and J. J. Neiger, for the People.

Mr. Justice DeYoung delivered the opinion of the court:

Herbert F. Buzan was indicted in the circuit court of Clay county for the crime of manslaughter. A jury found him guilty and he was sentenced to the penitentiary. He prosecutes this writ of error.

The plaintiff in error, on July 14, 1931, was about sixty-five years of age and resided in the city of Flora in Clay county. He held commissions as a police officer of the city and as a special deputy sheriff of the county. He was also employed by the Baltimore and Ohio Railroad Company as a private agent to keep trespassers from boarding or riding on trains carrying merchandise. His hours of

employment by the railroad company were from six o'clock in the evening until six o'clock the following morning.

The Baltimore and Ohio railroad runs in an easterly and westerly direction through the city of Flora. The railroad company's yards and the chutes where trains stop for coal and water are situated west of the company's passenger station in that city. The first and second streets, running north and south, east of the station, are Main and Locust streets. Second street lies south of and parallel to the railroad. North of the tracks and east of Main street are located a freight office and two warehouses. East of Locust street, a poultry house occupies a site north, and a lumber yard one south, of the railroad.

On July 14, 1931, about 7:00 P. M., an east-bound freight train arrived at Flora. When the train was ready to depart, twenty-five or thirty trespassers were aboard. A short distance west of the passenger station, the plaintiff in error climbed to the roof of one of the cars and as he walked east toward the locomotive, ordered the men to alight from the train. When he reached the third car from the locomotive, he fired two shots. One of the bullets struck and killed E. K. Barrett who, without permission, had been riding on the train. A post-mortem examination disclosed not only a wound in the upper part of the left shoulder but also the course of a bullet downwards through both lungs to the right chest wall.

The homicide was proved by several witnesses. D. Coggin stood on the west side of Main street and south of the tracks as the train passed. He saw about thirty men aboard the train. The plaintiff in error was on top of a car and walked east. He exhibited an instrument which appeared to be a revolver and commanded the men to leave the train. When the plaintiff in error reached Locust street, a shot was fired. He stepped to the opposite side of the car, and another shot followed.

Maggie Sloan was sitting in her front yard south of the tracks and immediately west of Locust street when the freight train passed. She saw the plaintiff in error walking west on top of the cars approaching a car on the side or end ladder of which another man was descending. The plaintiff in error had a revolver in his hand and two shots were fired. One of these shots was discharged while the revolver was pointed downwards. The man on the ladder fell to the ground, raised his head and fell again. The witness was about five or six hundred feet from the plaintiff in error and during the time she observed him he continued standing in an upright position.

At Main street, Loren McCann saw several men attempting to board the train. The plaintiff in error, who was on the roof, passed from the north to the south of the center of a car. A man on the ladder of one of the cars jumped or fell to the ground at a point east of the Locust street crossing. McCann found the man lying face downwards and blood was running from his mouth and shoulder. The plaintiff in error alighted from the train, walked to the injured man, discovered his wound, remarked that it was not severe and said he would call a doctor. McCann did not observe that the plaintiff in error, while on top of the train, fell, stumbled or was in a crouched position.

Frank Nanney, accompanied by his wife, was driving an automobile east on Second street when he saw the plaintiff in error ascend the ladder at the west end of the second car of the train. A little later, as the car was crossing Locust street, a shot was fired from the roof of the car. The plaintiff in error then crossed the running boards along the center of the roof and facing northwest, fired a shot to the north. About the time the first shot was fired a man alighted from the car ahead of the one on which the plaintiff in error stood, walked twenty or twenty-five feet and fell to the ground.

Belle Nanney, the wife of Frank Nanney, saw the plaintiff in error on top of a car in the train while a man was descending a ladder on the south side of the same car. The plaintiff in error standing upright and facing east fired a shot in a descending course and somewhat to the south. About the same time, the man who had been on the ladder, walked a few feet and fell to the ground a short distance east of Locust street. The plaintiff in error fired another shot from the north edge of the roof of the car on which he stood. A number of men jumped from the train at and after the shooting.

From his automobile which stood on Locust street north of the railroad tracks, O. H. Byers saw the freight train pass. The plaintiff in error stood on top of one of the cars facing west. He had a revolver in his hand and pointing it toward the ground fired a shot from the north side of the car. Byers did not see the plaintiff in error stumble or fall while the latter walked over the cars of the train.

The foregoing is the substance of the testimony introduced by the prosecution. The plaintiff in error testified that, at the time in question, the train was running twenty-five or thirty miles an hour; that he was walking on the roof of the third car near the north edge when he fired a shot into the air in an effort to scare trespassers from the train; that he started to run over the cars but struck a nail or projection in the roof of one and was thrown to his knees; that at the same time he involuntarily put out his hand near the south edge of the roof and while in that position the revolver was discharged; that his shoe bore the imprint of the nail or projection which caused him to fall; that he arose and walked to the west end of the car; that he then alighted on the north side of the train, crossed to the south side of the tracks, and saw a man who was shot; that he assisted in placing the wounded man on a stretcher, and that he had no intention of shooting him.

Travis Trainer saw the plaintiff in error on top of a box-car in the train as it passed his home which was north of the railroad and west of Locust street. A freight house obstructed the view of the witness but he heard a shot fired. In a few moments the plaintiff in error was on his hands and knees on top of one of the cars, and shortly thereafter a second shot followed. The train was running about twenty-five miles an hour at the time. Two witnesses corroborated Trainer's testimony that, on the night of the homicide, they saw the imprint of a nail on one of the shoes of the plaintiff in error. Sixteen witnesses, all of whom were residents of Flora and knew the reputation of the plaintiff in error as a law-abiding and peaceful citizen, testified that, in those respects, his reputation was good.

The contentions urged for a reversal of the judgment are that the circuit court erred in giving and refusing instructions; that, on account of newly discovered evidence, a new trial should have been granted, and that the evidence was insufficient to support the verdict.

The instructions given at the prosecution's request of which the plaintiff in error complains and which need to be reviewed are the first, seventh and eighth. The first instruction defined both voluntary and involuntary manslaughter and the seventh concerned only the voluntary offense. The statute provides that manslaughter is "the unlawful killing of a human being without malice, express or implied, and without any mixture of deliberation whatever. It must be voluntary, upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible, or involuntary in the commission of an unlawful act, or a lawful act without due caution or circumspection." (Cahill's Stat. 1931, p. 1040; Smith's Stat. 1931, p. 1043). The persons whom the plaintiff in error sought to remove from the train were trespassers. There was, however, no physical encounter between them and the plaintiff in error. A serious and highly provoking injury inflicted upon the

person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing was therefore wanting in the present case. Yet it is neither claimed nor shown that the two instructions to which objection is made operated to the prejudice of the defendant. Unless instructions improperly given are of such a nature that they resulted in prejudice or injury to the defendant, the giving of them is not ground for a reversal of the judgment. *People* v. *Rongetti,* 344 Ill. 278; *People* v. *Pargone,* 327 id. 463.

The objection urged to the eighth instruction is that its definition of criminal negligence is insufficient. The court instructed the jury that if they believed from the evidence, beyond a reasonable doubt, that the defendant killed the decedent while engaged in the lawful act of guarding or attempting to protect the property of his employer, yet if they further believed from the evidence, beyond a reasonable doubt, that the defendant at the time acted and conducted himself in such a reckless or wanton manner as showed an utter disregard of the safety of others under circumstances likely to cause injury, then he was guilty of manslaughter. Acts and conduct of the character described constitute criminal negligence, and if such negligence results in death the charge of manslaughter may be sustained against the offender. *People* v. *Sikes,* 328 Ill. 64; *People* v. *Allen,* 321 id. 11; *People* v. *Camberis,* 297 id. 455; *People* v. *Adams,* 289 id. 339; *People* v. *Falkovitch,* 280 id. 321.

The sixth instruction requested by the plaintiff in error informed the jury that, in determining whether any act was careless, reckless, wanton or criminally negligent, they should take into consideration all the facts and circumstances shown, and the instruction defined the degree of care and prudence which the law, under the circumstances, required to be exercised. The court gave the instruction after modifying it by striking therefrom the following sen-

tences, "The fact of the discharge of the revolver in question and the death of the deceased, E. K. Barrett, and the fact that it could have been possible for the defendant, Herbert F. Buzan, to have guarded against the discharge of the revolver at the time in question do not of themselves alone make out a case of criminal negligence. Very few acts in life are done with such care as to absolutely prevent accidents" * * * "An act which may be negligent under one set of circumstances may be reasonable and proper under another set of circumstances." * * * The sentences stricken were argumentative, and their omission was not prejudicial to the plaintiff in error. *People* v. *Jarvis,* 306 Ill. 611.

The plaintiff in error complains that the court refused to give five instructions which he requested. The first of these instructions recited facts not shown by the evidence and set forth statutes relating to unlawful assemblies and the duty of police officers to suppress riots. Manifestly the instruction had no application to the case and was properly refused.

The second refused instruction contained the statement that, before the jury could find the defendant guilty, they were required to believe from the evidence, beyond a reasonable doubt, that he, at the time in question, purposely and intentionally fired the revolver knowing the danger of his act and that it was likely seriously to injure the decedent, Barrett. The person shooting need not know that he may injure some particular person, for knowledge that he may injure any person whomsoever is sufficient to fix or impose criminal liability.

The presumption of a defendant's innocence and the requirement of proof of his guilt beyond a reasonable doubt were set forth in the third refused instruction. The jury were fully informed upon these subjects by given instructions and repetition was unnecessary. (*People* v. *Vozel,* 346 Ill. 209; *People* v. *Graves,* 331 id. 268). The fourth

refused instruction contained an amplified definition of a reasonable doubt. The phrase "reasonable doubt," it has often been said, needs no definition. (*People* v. *Drewell*, 348 Ill. 320). There was no error in refusing these instructions.

The fifth refused instruction read as follows: "The court instructs the jury that, where two conclusions can be reasonably drawn from a single circumstance, one tending to establish guilt, and the other tending towards the innocence of the accused, the law makes it your duty to accept the conclusion tending towards innocence rather than the one tending towards guilt." All the facts and circumstances shown by the evidence, and not a single circumstance, must govern the jury in deliberating upon the evidence and in arriving at their verdict.

Upon the motion for a new trial, the plaintiff in error submitted an affidavit by one of his attorneys in which it was stated that before and at the time of the trial the bullet which caused the death of Barrett was in the custody of the State's officers; that neither the defendant nor his counsel had an opportunity during that period to have the bullet examined by an expert; that after the trial, the defendant borrowed the bullet from the State's officers and caused it to be examined by an expert in ballistics; that if a new trial were granted, this expert would testify that the bullet struck some hard object at an angle of about five degrees before it entered the body of Barrett; that since the evidence showed the bullet's descending course, the expert's testimony would corroborate the defendant's statement that, just before the revolver was fired, he stumbled and fell to his hands and knees and consequently, that the revolver was accidentally discharged. The affidavit failed to disclose why the bullet was not available for examination prior to or during the trial. The fact that it was in the custody of the State's officers would not prevent an examination of it by the defendant or by any person appointed to represent him. It does not appear that, prior to the conclusion of

the trial, any effort was made, either by the defendant or by an agent in his behalf, to examine the bullet. Applications for a new trial on the ground of newly discovered evidence are subjected to close scrutiny. The burden is on the applicant to rebut the presumption that the verdict is correct and the evidence must meet the following requirements: First, it must appear to be of such a conclusive character that it will probably change the result if a new trial is granted; second, it must have been discovered since the trial; third, it must be such as could not have been discovered before the trial by the exercise of due diligence; fourth, it must be material to the issue; and, fifth, it must not be merely cumulative of the evidence offered on the trial. (*People* v. *Petrilli,* 344 Ill. 416; *People* v. *Mindeman,* 318 id. 157; *People* v. *Dabney,* 315 id. 320; *People* v. *Pennell,* 315 id. 124; *People* v. *LeMorte,* 289 id. 11; *People* v. *Johnson,* 286 id. 108; *People* v. *Williams,* 242 id. 197; *Henry* v. *People,* 198 id. 162). The plaintiff in error failed to meet the first, second, third and fifth of the foregoing requirements.

The contention that the verdict cannot be sustained is untenable. The evidence shows that there were twenty-five or thirty trespassers on the freight train; that the plaintiff in error endeavored to drive them from the train before it left the city; that, although no resistance was offered, he fired two shots, and that Barrett was killed by one of them. Witnesses called by the State deny the claim of the plaintiff in error that he fell or stumbled on the roof of a car in the train and that, in consequence, his revolver was accidentally discharged. While there are inconsistencies in the testimony of the State's witnesses, none is of such a character as to destroy or even impair the effect of the material facts to which these witnesses testified. It was the jury's province to determine the credibility of the witnesses and the weight to be accorded to their testimony. There is in this case sufficient evidence to convict and it

cannot be said that the verdict is palpably contrary to the weight of the evidence. In such a situation this court will not substitute its judgment for that of the jury. *People* v. *Chaney,* 342 Ill. 175; *People* v. *Herbert,* 340 id. 320; *People* v. *O'Grady,* 339 id. 263; *People* v. *Flanagan,* 338 id. 353; *People* v. *Romano,* 337 id. 300; *People* v. *Kessler,* 333 id. 451; *People* v. *Nowicki,* 330 id. 381; *People* v. *Hoffman,* 329 id. 278; *People* v. *Thompson,* 321 id. 594.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*