THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE D. BARKSDALE, Defendant-Appellant.

(No. 53568; ■■■■■■■■

First District—December 8, 1970.

Gerald W. Getty, Public Defender, of Chicago, (Harold A. Cowen, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, Michael J. Goldstein, and William E. Oplatka, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

Willie D. Barksdale, defendant, was indicted and tried on a charge of murder. At his trial the jury found him guilty of involuntary manslaughter, and he was sentenced to not less than four nor more than eight years in the penitentiary.

The defendant admits that he shot and killed Walter Williams on October 3, 1966; however, he maintains that there was insufficient evidence to sustain the charge of involuntary manslaughter.

On the evening of October 2, 1966, four young men, including the deceased and Joseph Watkins [whose birthday was being celebrated], visited a number of bars and had a few beers. Later, around midnight, they decided to contribute fifty cents each and buy gasoline for the car. At the gas station the driver, Zelner Jones, ordered $2.00 worth of gas. Walter Williams, the deceased, needed change so that he could contribute his fifty cents, and he held a dollar bill out the window, asking the attendant [defendant] for change, but his request was ignored. When the attendant collected the $2.00, Williams again asked for change and again was ignored. When the attendant returned with green stamps Williams asked him about the change and the attendant said, "What the hell about the change  *  *  *."

Augustus Townes, one of the group, testified that after he heard the attendant make the previous remark, he heard a shot and saw Williams slump down with blood running from his head. According to Zelner Jones' testimony, after Williams' requests for change the defendant said, "Smart alec  *  *  *  I don't have to give you no change." The defendant then stepped back, pulled out a pistol and shot Williams from a distance of about two feet.

Joseph Watkins testified that when the defendant told Williams he had no change, Williams said "I don't see why not. You run a service station." The defendant then moved back, fired into the car and killed Williams.

He waved the gun at them and said, "You all better get out of here before I shoot all of you." Jones began slowly driving from the station, and at the sidewalk they noticed a police car; the officers got out and motioned Jones to the curb, where a search of the boys and the car disclosed no weapons of any kind.

Officer Walter Legrow testified that he heard the gunshot from the gas station; that when he questioned the defendant he was told that the deceased "tried to slick me on the change so I shot him. You can't take any chances." Officer John Waters heard and verified that statement. On cross-examination Officer Legrow denied that the defendant had told him the boys had tried to stick him up.

The defendant testified that he had lived in Chicago for thirty years and had been a gas station attendant on and off for seventeen years. On the morning in question the car with the four boys came into the station at about 12:45; the driver asked for $2.00 worth of gas, and the defendant had to wait about 15 minutes before he was paid. Williams kept asking for change but offered no money to be changed, and when the defendant wiped the windshield Williams said he would stick him up. The defendant said, "Somebody in back says I will stick you up and was fumbling on the floor, kind of excite me  *  *  *. When I came up I shot but I don't even know that I hit anybody  *  *  *." He said he had been the victim of a holdup previously at 7400 South Cottage Grove. He told the boys to get out of the station, and when the officer came to him and asked for the gun he gave it to him, saying that a robbery had been attempted.

The defendant argues that the record does not justify the conclusion that he was proved guilty beyond a reasonable doubt. He argues first that the testimony discloses his alertness to a robbery due to the suspicious behavior of the boys; that they were dressed in leather coats and wore dark glasses; that they kept him waiting ten to fifteen minutes for payment of the gas. He also argues that the different versions given by the boys regarding the amount of drinking they had done would lead to the suspicion that they may have started out to celebrate a birthday and got drunk enough to try a stickup.

■■ By such argument the defendant would have this court conclude that he was alerted to a robbery; that, although he does not say so, he intimates that since the boys looked suspicious his belief and act were reasonable; and he argues that on that analysis he should have been acquitted. The difficulty with that argument is that it presents questions which properly belong to the trier of fact at the trial. However, the jury found the facts to be different, and in order to follow defendant's argu-

ment we would have to rule that the jury's verdict was palpably erroneous. (*People v. Boyd,* 105 Ill.App.2d 345, 349.) On the record before us we cannot make such a ruling.

The defendant argues that the jury had the choice of finding him guilty of murder or acquitting him. He maintains that if the State's evidence were believed the jury should have found him guilty of murder. or acquitting him. He maintains that if the State's evidence were believed the jury should have found him guilty of murder. He then argues that the jury attempted to strike a compromise by finding him guilty of involuntary manslaughter, but that the evidence does not justify such a finding. He cites *People v. McMurry,* 64 Ill.App.2d 248, in which case this court found it was error to have given an instruction on voluntary manslaughter when there was no evidence introduced tending to show that the defendant was acting under intense provocation. We think that case is distinguishable from the one before us where there was sufficient evidence to justify a finding of involuntary manslaughter because the jury was entitled to believe that the defendant had acted recklessly and in such a manner that his act was likely to cause death or great bodily harm.

Ill. Rev. Stat. 1965, ch. 38, par. 9—3, defines involuntary manslaughter and reckless homicide as follows:

(a) "A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly."

Ill. Rev. Stat. 1965, ch. 38, par. 4—6, provides in part:

"A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that * * * a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

In *People v. Hunter,* 365 Ill. 618, the Supreme Court said at page 623:

"Involuntary manslaughter may be committed without any intent of killing, provided it was done in the commission of an unlawful act, or of a lawful act, which probably might produce such a consequence in an unlawful manner."

The *Hunter* court reversed the defendant's conviction on the ground that he had acted in self-defense, and the jury in the instant case could have freed the defendant if it had believed that he was acting in self-defense. However, the jury was not bound to believe defendant's assertions of having feared a stickup. Officer Legrow denied the defendant had told

him about a threatened robbery, and both officers involved testified that the defendant had said he shot the deceased because he had tried to "slick" him on the change, and "you can't take any chances." The three surviving boys all testified that the deceased had simply asked for change for a dollar.

In *People v. Johnson*, 54 Ill.App.2d 27, 36, this court said that involuntary manslaughter "is an offense which happens without the intent to inflict injury and death results from acts performed recklessly." During the trial in the instant case the defendant testified, "When I came up I shot but I don't even know that I hit anybody or anything * * *" He also said he "didn't point the gun * * * just came up with it and shot." At another point in his testimony the defendant said, "I don't know where I fired it, I just fired * * * I couldn't see where his head was, I just fired a shot. I didn't see anybody where I fired a shot. I just fired." It is undisputed that when the defendant did fire he was only two feet from the automobile.

In *People v. Post*, 78 Ill.App.2d 121, 128, this court reiterated that the "gist of the offense of involuntary manslaughter is the reckless performance of an act likely to cause death." There the defendant had taken his pistol with him when he went outside to investigate noises he had heard. He saw a figure leap over a fence in the alley and run towards a car. When the car was driven away the defendant fired at it to frighten the driver enough that he would not return; the shot killed the driver. This court affirmed defendant's conviction, but in 39 Ill.2d 101, the Supreme Court reversed and said at page 105: "The shooting of a .22 caliber pistol toward the ground is not *per se* reckless and is not such an act as would likely cause death or bodily harm to a person some distance away."

As we have pointed out, in the instant case the defendant neither shot toward the ground, nor toward an object "some distance away" which contained people. It was a question for the jury whether the defendant fired point blank into a car from a distance within two feet, in which case they would be entitled to find the act reckless. Had the jury believed the defendant intended to kill, they could have found him guilty of murder. Apparently, they believed otherwise, that the defendant had simply acted unlawfully and recklessly.

■■ We must conclude that there was sufficient evidence presented from which the jury could find that the defendant was guilty of involuntary manslaughter. Accordingly, the jury was properly instructed on the lesser included offense, and *People v. McMurry*, 64 Ill.App.2d 248, is inapplicable. The evidence was not such as would permit a finding of murder, or of innocence; therefore, it was correct to have given the instruction on involuntary manslaughter. *People v. Taylor*, 36 Ill.2d 483,

108

489; *People v. Pursley,* 302 Ill. 62, 72; *People v. Bacon,* 293 Ill. 210, 217.

Finally, the defendant argues that it would appear from the evidence that Officer Waters was lying when he said that Officer Legrow searched the car, which would make meaningless the statement that they had found no weapons. The defendant bases this argument on the fact that a bottle of wine was apparently not inventoried, although several of the boys had mentioned purchasing a bottle of wine which was in the car and unopened. It was argued that the "failure to find it throws suspicion on the reliability of the police and their testimony (since they claimed they had searched the car) and the story told by each of the three boys as to their purpose in going into the filling station  \*  \*  \*"

■■ Neither officer was ever asked if he had found such a bottle in the car, and unless such a question had been expressly asked, it is unlikely that such information would have been volunteered. Since there is nothing inherently suspicious or illegal about having an unopened bottle of wine in a car there is no reason why the officer should have testified concerning it without being asked.

The defendant's attempt to make an argument based on questions not asked and responses not given is not acceptable. The jury was presented with evidence from which it was entitled to find the defendant guilty of involuntary manslaughter, which finding we consider correct. The judgment of the Circuit Court is affirmed.

Judgment affirmed.

LYONS and BURKE, JJ., concur.