THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JESSE JAMES THOMAS, Defendant-Appellant.

(No. 71-259;

Fifth District—November 27, 1972.

Kenneth L. Gillis, of Defender Project, of Chicago, for appellant.

Byron L. Connell, State's Attorney, of Mound City, for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

In a jury trial in the Circuit Court of Pulaski County the defendant, Jesse James Thomas, was convicted of involuntary manslaughter and was sentenced to the penitentiary for a term of not less than two nor more than seven years. In this appeal he contends that he was not proven guilty beyond a reasonable doubt, that the prosecutor's final argument was prejudicial and deprived him of a fair trial, and that his sentence was excessive.

The incident occurred in Kid Green's Tavern in Mounds City about 1:20 A.M. on January 9, 1971. Defendant admits that he fired one shot from a .22 caliber pistol which penetrated one person's arm and then lodged in the chest of another person killing him. The controlling issue is whether the gun was fired accidentally, or in self-defense, or so recklessly as to constitute involuntary manslaughter.

The shooting was precipitated by an altercation between two people in which defendant took no part. Calvin Lowe testified that Yvetta Bennett knocked a drink from his hand, that he pushed her away, that she grabbed a beer bottle from the bar, and that he took it away from her. Yvetta stated that she was having an argument with Calvin, and, although she did not remember what it was about, he pushed her and she pushed him, and then when he started to choke her, she grabbed for the bottle. She then went to the back of the tavern, saw the defendant, and asked him to escort her across the street to another tavern. She told defendant she was "fussing" with a boy up front and did not want to go past him by herself. As they approached Calvin on their way out, and as defendant stopped to ask Calvin what happened, another individual, Darnell Baldwin, stepped into the discussion. From this point on six witnesses for the State told substantially the same story. Defendant told Darnell that he was not talking to him. When Darnell persisted, the defendant started punching him in the chest with his forefinger forcing him backwards until he fell over one of the bar tables. As Darnell got up defendant pulled a gun out of his coat pocket and fired one shot. The shot passed through Darnell's arm and struck and killed Jerry Herrod who was seated at a bar table with a number of friends.

Yvetta testified that when she and defendant got to the middle of the tavern where there were seven or eight "guys" from Cairo near Calvin; that when defendant got into an argument with Darnell she ran out the front door and did not see or hear the shooting.

Defendant testified that when he stopped to talk to Calvin, Jerry Herrod was standing next to him leaning on the bar. Defendant said that Darnell grabbed him by the shoulder, that he, defendant, pushed him away, telling him that he was not talking to him; that Darnell did not fall

as he did not push him that hard; that Darnell came back at him with somebody else and that he, defendant, then jumped back, pulled the gun from his pocket and it went off. He said he was carrying the gun because he intended to go target practicing, that he pulled it in self-defense, and that he did not intend to shoot anyone. On cross-examination defendant admitted that he could not identify any of the witnesses who had testified, as the ones coming at him.

Ill. Rev. Stat. 1969, ch. 38, par. 9—3 (a), provides: "A person who kills an individual without lawful justification commits involuntary manslaughter if his acts, whether lawful or unlawful, which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly." Sec. 4—6 provides, "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation * * *".

■■ On the basis of the facts of this case it can hardly be denied that, unless otherwise justified, the shooting of a gun, or mere pulling of a loaded gun from one's pocket, in a crowded tavern constitutes a reckless act committed in utter disregard of the safety of others. Defendant contends that he did not intend to shoot anyone, but involuntary manslaughter is an offense in which death results from acts performed recklessly even though there was no intent to inflict injury. (*People v. Johnson,* 54 Ill.App.2d 27.) Also, a person shooting need not know that he may injure some particular person, for knowledge that he may injury any person whomsoever is sufficient to impose criminal liability. (*People v. Buzan,* 351 Ill. 610.) Defendant further contends that he drew his gun in self-defense, based on his testimony that unidentified persons were coming at him. This self-serving statement is contrary to the testimony of all the other eye-witnesses, and its mere assertion by the defendant does not compel belief. (*People v. Gajda,* 87 Ill.App.2d 316.) In effect, defendant's arguments present questions which properly belong to the jury to decide, for it is solely within their province to determine the credibility of the witnesses and the weight to be accorded their testimony. (*People v. Barksdale,* 131 Ill.App.2d 103, 266 N.E.2d 516; *People v. Buzan,* 351 Ill. 610.) Certainly the jury's verdict was not palpably contrary to the weight of the evidence. To the contrary, we find the evidence of defendant's guilt overwhelming.

■■ Next, defendant argues that the prosecutor committed prejudicial error in his final argument by referring to defendant as "Tex", talking about a fast draw, the type of snub-nosed gun used, and, in general,

equating "the prejudicial themes of popular gun use in Pulaski County and the heritage of the State of Texas". All of these arguments are made for the first time on appeal, and, no objection having been made in the trial court the error, if any, was waived. (*People v. Hampton*, 44 Ill.2d 41; *People v. Somerville*, 71 Ill.App.2d 381.) But, in any event, we have read the prosecutor's final argument and find no basis for defendant's complaint. Throughout the trial he was referred to by his nickname "Tex", and there was evidence about the type of gun and ammunition used and also evidence that defendant had engaged in target practice. It is not reversible error to call defendant by his nickname. (*People v. Travis*, 64 Ill. App.2d 197.) Nor does it exceed the bounds of proper debate to comment on the facts and circumstances proved or upon the legitimate inferences that may be drawn therefrom. (*People v. Miller*, 13 Ill.2d 84.) In our opinion there is no occasion to attribute melodrama to the prosecutor's argument, nor is there any indication that the jury was improperly influenced to the substantial prejudice of defendant. *People v. Stahl*, 26 Ill.2d 403.

■■ Finally, defendant contends that his sentence was excessive relying primarily on the fact that there was evidence of his prior good reputation, and that he did turn himself in to the police. Under the circumstances of this case these two factors alone cannot be said to constitute a substantial showing justifying a reduction of a two to seven year sentence for the killing of another human being.

Accordingly the judgment of the Circuit Court of Pulaski County is affirmed.

Judgment affirmed.

G. MORAN, P. J., and JONES, J., concur.