**People of the State of Illinois, Plaintiff-Appellee, v. Herman Travis, Defendant-Appellant.**

**Gen. No. 50,456.**

First District, Second Division.

October 19, 1965.

Castle, Brintlinger, Carey & Filter, of Chicago (Thomas F. Carey, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. Roger Horsky, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Herman Travis was found guilty by jury on a charge of the murder of James Flemming. He appeals from a judgment and sentence to a term of 16 to 30 years in the penitentiary. At about 5:30 p. m. on December 11, 1960, the defendant, Herman Travis, the deceased, James Flemming, and a group of others were present at a tavern in Chicago known as "The House on 92nd Street." The Harlson brothers, Nelson and Hylton, purchased a half pint of whiskey and invited Flemming to join them for a drink in the back room. As the two Harlson brothers walked to the back room they observed the defendant, Herman Travis, in the rear part of the tavern talking to a young lady named Willie Ann Robinson. Nelson Harlson testified that as they passed the defend-

ant, he heard the defendant say, "There is that no good sonofabitch." Nobody else said anything prior to this time. The witness then heard about 3 slaps, he turned and saw Flemming fall back to the wall. Flemming got up, straightened himself out and said "You're wrong, man, you're wrong." There was nothing in the hands of Flemming, nor did he say anything other than this remark. Witness then heard a shot and saw a little hole in Flemming's chest and saw a gun going back into defendant's pocket.

Hylton Harlson testified that these events took place after the three, Nelson Harlson, Flemming and himself had a drink and were returning to the front part of the tavern. This witness heard mumbling and when he turned around he saw Flemming being slapped and being pushed against the wall by defendant. Flemming straightened up and was fixing his clothes when defendant shot him in the chest, put the pistol back in his pocket and ran out. Hylton said that at no time did Flemming have anything in his hands. Both Nelson and Hylton testified that they did not see Flemming reach into his pockets at any time. Corachel Mitchell testified that defendant called Flemming an s. o. b., that defendant slapped Flemming, pushed him and then shot him. Mitchell said that he was sitting on a stool near the archway and could see the entire incident. Mitchell knew the defendant by the name of "Wyatt Earp." After the shooting of Flemming, the defendant fired shots at the bartender as he attempted to follow defendant out to the street. Willie Ann Robinson, testifying for the defendant, said that the defendant was arguing with the deceased and that all she heard said by defendant was "Don't say it again." She testified that Flemming slapped the defendant; that Flemming reached into his pocket and then defendant reached into his pocket and came out with a gun; that Pearline Ray struggled with the defendant for the gun and that is when the gun went

199

off; that Marilyn McNeil had hold of defendant's left arm; that after the shot defendant ran out and the bartender, Dick Brisco, took a shot at defendant while he was fleeing. Pearline Ray testified that she observed the deceased and the defendant talking when she went into the washroom and arguing when she came out. She didn't see any blows exchanged and walked behind the defendant and went out front again. She did not testify to any struggling with the defendant over the gun. The bartender (Brisco) testified that he did not have a gun or take a shot at the defendant; that when he heard the shot he started to the back, at which time Hylton Harlson told him that defendant had shot the man. The bartender gave Hylton a dime to call the police and then went to the door to look after the defendant who was already out the door. The bartender said that as he looked out the door defendant fired another shot in the direction of the door. Brisco, the bartender, identified the defendant and said that he was known to him as "Wyatt Earp." Mary Jane Meadows and Louise Johnson testified that they were in the front part of the tavern. Mary Jane Meadows said she did not hear the first shot but only the one fired by Brisco. Louise Johnson stated that she heard something like a loud slap, saw her brother, the defendant, come out of the back and saw Brisco fire and hit her brother, the defendant. The defendant continued out the door and Brisco rushed to the door, where, she said she grabbed Brisco and begged him not to shoot her brother. There was testimony that James Flemming came to his death from hemorrhage following bullet wounds of the "chest (lung)."

The defendant testified that he was in the back room talking with Willie Ann Robinson when the Harlson brothers and Flemming came into the back room. He did not say anything to any of them, but Flemming said to him "Leave her alone, you sonofabitch, I'll kill you."

He replied "Don't say it no more," then Flemming hit him. When defendant pushed Flemming back against the wall the latter ran his hand in his pocket. Defendant pulled a gun and told Flemming not to move. Pearline Ray came out of the washroom, grabbed defendant's arm and they started wrestling for the gun; Flemming was still coming toward defendant, who told him to get back; that is when the gun went off. He stated that when he got loose from Pearline he (defendant) made it to the front door. He said that at the time he did not know that Flemming was shot. He ran out of the tavern and went home; from there he went to Jamie Lee's house on Dorchester Avenue until that Friday, then he hitch-hiked to Louisiana where he stayed for about 6 months. Defendant was arrested on June 24, 1961, about one week after he returned from Louisiana.

■ Defendant maintains that reference by the State's Attorney and the State's witnesses to the defendant as "Wyatt Earp" were prejudicial and prevented him from getting a fair trial. The defendant assumes that the name "Wyatt Earp" is synonymous with connotations of quick gun, killer, wild west, deadly and trigger happy and presents an evil or bad image to the jury. The People say that through the medium of television the character "Wyatt Earp" has the popular image of a heroic law enforcement officer. The record shows that when the events about which they were testifying took place the defendant was known to some of the witnesses only as "Wyatt Earp." In response to a direct question the defendant answered that his nickname was "Wyatt Earp." The testimony shows that the defendant was known as "Wyatt Earp." We do not think that reversible error was committed in calling the defendant by the name by which he was known at the time of the commission of the alleged crime.

The second point advanced by the defendant is that the court erred in not allowing defendant to explain his

reasons for flight. The defendant was allowed to testify that the reason he left Chicago was that he was scared. After being in Louisiana for 6 months, he returned to Chicago. He was arrested a week after his return. He testified that he was told that "the police were calling him a maniac and going to kill him," so he left town. An objection by the State's Attorney to this statement was sustained but the testimony was not stricken. We are of the opinion that the defendant was permitted to explain the reason for his flight. There was no showing out of the presence of the jury, as to what further testimony by way of an explanation for the flight the defendant would like to introduce.

 Finally defendant asserts that the final arguments of the State's Attorney prejudiced him. In the argument the State's Attorney said that the police were looking for a man known to them as "Wyatt Earp." This was an inadvertent misstatement of the evidence, based on the testimony of witnesses Brisco, Mitchell and the assumption that the name they knew defendant under was conveyed to the police. The policeman did not testify that he knew the defendant as "Wyatt Earp." The evidence shows that the police were looking for Herman Travis. We do not think that he was harmed by the referral to him as "Wyatt Earp." The defendant points to other statements made by the Assistant State's Attorneys and insists that their argument was so prejudicial as to prevent defendant from receiving a fair and impartial trial. Parts of the argument delivered by the Assistant State's Attorneys in this case transcend the bounds of legitimate argument. Reversal is not warranted unless the improper argument influenced the jury to the substantial prejudice of the accused. The record strongly supports the verdict of the jury. We do not think that the defendant was prejudiced by the argument. See People v. Lopez, 10 Ill2d 237, 240, 139 NE2d 724; People

v. Hampton, 24 Ill2d 558, 182 NE2d 698, and People v. Heywood, 321 Ill 380, 152 NE 215.

For these reasons the judgment is affirmed.

Judgment affirmed.

BRYANT and LYONS, JJ., concur.