THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL ADAMS, Defendant-Appellant.

First District (2nd Division) No. 85—3361

Opinion filed May 5, 1987.—Rehearing denied June 16, 1987.

Steven Clark and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Paula M. Carstensen, and Joanne M. Roddy, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant appeals his convictions of two counts of armed robbery (Ill. Rev. Stat. 1983, ch. 38, par. 18—2(a)), one count of armed violence based on possession of a stolen motor vehicle (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2; ch. 95½, par. 4—103(a)), possession of a stolen motor vehicle (Ill. Rev. Stat. 1983, ch. 95½, par. 4—103a(1)), and theft (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(a)(1)). Defendant also appeals his sentences for concurrent terms of imprisonment for 20 years on the two counts of armed robbery, 10 years for armed violence, and 5 years for theft.[1]

Defendant Michael Adams and seven other codefendants were indicted for several offenses. Adams' case was severed and a jury convicted him of the enumerated offenses.

On appeal, defendant contends that: (1) his case must be remanded for a hearing on whether the State improperly used peremptory challenges to exclude blacks from the jury; (2) he was not proven guilty beyond a reasonable doubt; (3) he was denied a fair trial; (4) the armed violence conviction was improperly predicated upon the offense of possession of a stolen motor vehicle; (5) he was improperly sentenced; and (6) the court erred in appointing assistant public defenders to represent him on his post-trial motions because a conflict of interest existed.

The evidence showed that on January 26, 1985, at about 7 p.m., Ernestine Roseman (Roseman), age 57, and Cyrus Wooldridge

---

[1]Sentence was not imposed on the possession of stolen motor vehicle count because it merged with the armed violence count.

(Wooldridge), age 73, returned to Wooldridge's home after grocery shopping. Roseman was driving Wooldridge's 1978 Buick. They parked, locked the car, and activated the burglar alarm. While they were crossing the street, they saw a group of five to seven youths walk towards them. The group encircled them; one pointed a shotgun at them and announced: "[T]his is a stickup. Stand still, if you don't I'll kill you. Give us your money." Roseman saw three handguns and Wooldridge saw one handgun. One of the youths took approximately $65 from Wooldridge's pocket. Roseman's ring, purse containing about $30, and the keys to Wooldridge's car were also taken. The group got into Wooldridge's car and drove away.

The victims immediately phoned the police and gave a description of the car. Wooldridge's car was found parked in a lot within 45 minutes and was kept under surveillance. About an hour later, a group of youths got into the car and drove away. The police followed the car, saw it pull over, and observed a female and a child leave the car and walk across the street. Two officers pulled the car over and saw the driver turn and drop a handgun into the back seat of the car as they approached. The officers identified Adams as the driver. After the youths were arrested, a gun and Roseman's cosmetics were recovered from the back seat of the car.

Roseman identified the gun recovered from the car as being similar to one used in the robbery. A shotgun was recovered from another codefendant.

Roseman and Wooldridge viewed separate lineups later that evening at the police station. Wooldridge identified Adams as resembling one of his assailants. Roseman identified Adams and another suspect from the lineup as resembling two of her assailants.

Marcus Skipper, 14 years old, knew the defendant for about four years. He testified that on January 26, 1985, at about 6 p.m., Adams and the codefendants were at his house when one said, "Let's go make some money." The group, including the defendant, left Skipper's house and walked through a field. Skipper testified that one defendant had a shotgun and another had a handgun. The group saw Roseman and Wooldridge, and another defendant announced the stick-up. Skipper testified that he and another youth stood across the street and observed the robbery. He saw one defendant give the car keys to Adams and saw Adams driving the car away from the scene. Shortly thereafter, Skipper saw the group of defendants, including Adams, and was shown the money they had taken from Wooldridge and Roseman.

Defendant's only witness at the trial was Adams' girlfriend, who

testified that she was with Adams that evening. Adams now appeals his convictions and sentence.

I

██ Adams' first contention on appeal is that this cause should be remanded for a hearing on whether the State improperly used their peremptory challenges to exclude blacks from the jury under the recent case of *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. The trial court made no inquiry into the State's use of peremptory challenges. Illinois law has been clear on this controversial issue. Our supreme court has repeatedly held that a defendant's right to an impartial jury is impaired only when blacks are systematically excluded from the jury in case after case. (*People v. Mack* (1984), 105 Ill. 2d 103, 473 N.E.2d 880, *cert. denied* (1987), 479 U.S. ___, 94 L. Ed. 2d 127, 107 S. Ct. 1266; *People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202, *cert. denied* (1984), 469 U.S. 1028, 83 L. Ed. 2d 372, 105 S. Ct. 447; *People v. Davis* (1983), 95 Ill. 2d 1, 447 N.E.2d 353, *cert. denied* (1983), 464 U.S. 101, 78 L. Ed. 2d 697, 104 S. Ct. 507.) Defendant has presented no evidence that any such practice occurred here.

However, while the defendant's appeal was pending, the United States Supreme Court held that a defendant need not show that the State has engaged in systematic racial discrimination in jury selection in case after case. (*Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) Rather, under *Batson*, the equal protection clause forbids the prosecution from challenging potential jurors solely on account of their race, and a defendant may make a *prima facie* showing of purposeful racial discrimination by citing facts concerning jury selection at his own trial. Once a defendant has demonstrated circumstances from which one could infer that the prosecutor used peremptory challenges to exclude persons from the jury because of their race, the burden shifts to the State to present a neutral explanation for its conduct. (476 U.S. 79, 97, 90 L. Ed. 2d 69, 88, 106 S. Ct. 1712, 1723.) The court declined to rule on the retroactive application of its decision.

Recently, however, in *Griffith v. Kentucky* (1987), 479 U.S. ___, 93 L. Ed. 2d 649, 107 S. Ct. 708, the United States Supreme Court held that the ruling on *Batson* is to be applied retroactively to all cases, State or Federal, pending on direct review or not yet final at the time *Batson* was decided.

██ Accordingly, we remand this case to the circuit court for a hearing on the present record and any additional record to deter-

mine whether, under *Batson*, the prosecutor purposefully discriminated against blacks in the use of peremptory challenges. If the circuit court finds that the prosecutor purposefully discriminated against blacks in exercising peremptory challenges, the court is directed to order a new trial. In the event the circuit court finds that the prosecutor did not purposefully discriminate, the court is directed to affirm the judgment and sentence.

## II

■■ ■ Next, defendant contends that he was not proven guilty beyond a reasonable doubt because there was no positive identification by the complaining witnesses and he was denied a fair trial by the admission of the identification testimony. Defendant maintains that the identification evidence was used as a substitute for a positive in-court identification to bolster the State's weak accomplice testimony and circumstantial evidence. We find this argument unpersuasive.

When the identity of the accused is at issue, the testimony of one witness is sufficient to sustain a conviction, even though such testimony is contradicted by the accused, provided that the witness is credible and was able to view the accused under such circumstances as would permit a positive identification. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) In this case, Roseman and Wooldridge viewed a lineup independently from each other within a short time after the robbery. They both selected Adams as resembling one of their assailants. Roseman testified that although it was dark outside, the area was well-lighted. At trial, both victims identified defendant from a photograph and made in-court identifications. In addition to the identifications, there is meaningful corroboration of defendant's identification and circumstantial evidence of his guilt. The officers and Skipper testified about defendant's participation in the robbery. Defendant was arrested driving the stolen car, and a gun, also identified by the victim, was recovered from the car.

■■ Defendant contends that Skipper was not a credible witness because he agreed to cooperate with the police. Defendant's claim is without merit. Whether accomplice testimony, corroborated or uncorroborated, is a satisfactory basis for convictions goes to the weight of the evidence and is, therefore, within the province of the jury. (*People v. Wilson* (1977), 66 Ill. 2d 346, 349, 362 N.E.2d 291.) In this case, Skipper's testimony is strongly corroborated and this court cannot substitute its judgment for that of the jury on questions in-

volving the weight of the evidence and the credibility of all witnesses. *People v. Sanders* (1980), 86 Ill. App. 3d 457, 475, 407 N.E.2d 951.

A reviewing court will not reverse a conviction unless the evidence is so improbable as to raise a reasonable doubt of defendant's guilt. *People v. Racanelli* (1985), 132 Ill. App. 3d 124, 134, 476 N.E.2d 1179, *appeal denied* (1985), 106 Ill. 2d 558.

In light of the foregoing, there is no question that the testimony and evidence sufficiently supported the jury's verdicts. Defendant was proved guilty beyond a reasonable doubt.

■ Defendant also argues that admission of evidence about the victims' viewing of the pretrial lineup was reversible error. He maintains that an in-court identification must be a positive identification that the defendant is the offender and not an identification of the defendant as the person picked from a lineup as one resembling the offender. He concludes that the jury was misled. Trial counsel did not object to this testimony nor was it raised in post-trial motions.

It is well established that the failure to object to evidence fails to preserve the issue on appeal and failure to raise the issue specifically in a post-trial motion results in a waiver on appeal. (*People v. Hall* (1983), 117 Ill. App. 3d 788, 801, 453 N.E.2d 1327, *cert. denied* (1984), 467 U.S. 1228, 81 L. Ed. 2d 878, 104 S. Ct. 2683.) However, defendant asserts plain error alleging that this evidence was inadmissible hearsay. (Ill. Rev. Stat. 1985, ch. 38, par. 115—12.) Here, the testimony was cumulative, supported by corroborative circumstances, and both victims testified, allowing for cross-examination. Therefore, the purpose of the hearsay rule was satisfied. See *People v. Smith* (1978), 59 Ill. App. 3d 480, 490, 375 N.E.2d 941, *appeal denied* (1978), 71 Ill. 2d 620.

■■ We also find defendant's argument that he was denied a fair trial, because Skipper testified that defendant's nickname was "Ice Mike" and the State implied defendant was a member of a gang during closing argument, to be unpersuasive. It is not reversible error to call a defendant by his nickname. (*People v. Thomas* (1980), 8 Ill. App. 3d 690, 694, 290 N.E.2d 418, *appeal denied* (1979), 79 Ill. 2d 628.) The prosecutor's comments during closing argument did not improperly imply gang membership. The comments were proper argument based upon the evidence because they refer to the gang or group of robbers and not gang affiliation. See *People v. Agee* (1980), 85 Ill. App. 3d 74, 405 N.E.2d 1245, *appeal denied* (1980), 81 Ill. 2d 594.

■ Defendant also contends that his conviction for theft of prop-

erty over $300 should be reduced to misdemeanor theft because there was no evidence that the fair market value of the car exceeded $300. The standard for determining the value of property at the time and place of the theft is the property's fair cash market value, and evidence presented to support a conviction for a felony amount, although given through the testimony of witnesses not addressing the precise fair cash market value, is sufficient. (*People v. Davis* (1985), 132 Ill. App. 3d 199, 202, 476 N.E.2d 1311.) Wooldridge testified that he owned the car, he identified it, described it, and said that it was worth more than $300. He was competent to testify to the value of the car and the weight to be given to his testimony was for the jury to decide. *People v. Newton* (1969), 117 Ill. App. 2d 232, 236, 254 N.E.2d 165.

### III

Next, defendant argues that his conviction for armed violence predicated on the possession of a stolen vehicle must be reversed because the armed violence statute does not apply to possessory offenses. We disagree.

In *People v. Lenoir* (1984), 125 Ill. App. 3d 260, 465 N.E.2d 1027, *appeal denied* (1984), 101 Ill. 2d 585, the defendant unsuccessfully argued that possessory offenses cannot be used as underlying or predicate felonies for armed violence. The deterrent purpose of the armed violence statute depends on punishing felons who carry weapons more severely than felons who don't. The statute penalizes the proximity of the weapon to the commission of the predicate felony. (*People v. Eure* (1986), 140 Ill. App. 3d 387, 488 N.E.2d 1267, *appeal denied* (1986), 112 Ill. 2d 563.) The statute clearly applies in this case because the defendant, while armed with a gun, committed felony theft and possession of a stolen vehicle.

Defendant argues that the convictions for theft and armed violence must be vacated because they arose from the same acts that constituted the armed robbery conviction. The State responds that the convictions arose out of separate acts. The standard for determining when a conviction must be vacated on "one act-one crime" grounds is set out in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273. Where more than one offense stems from a series of incidental or closely related acts and the offenses are not by definition lesser included offenses, convictions with concurrent sentences can be maintained. (66 Ill. 2d 551, 566, 363 N.E.2d 838.) Applying this test to the facts here, the conviction must stand. See *People v. Mc-*

*Carty* (1983), 94 Ill. 2d 28, 34-35, 445 N.E.2d 298.

## IV

 Next, defendant maintains that we must remand for new sentencing because defense counsel improperly waived an updated presentence report and the court improperly considered a finding of delinquency murder where the information had not been verified.

Following the jury's verdict, on October 2, 1985, defense counsel asked whether a waiver form for a presentence investigation report was available. A presentence investigation report had been prepared for pretrial purposes and was filed on June 12, 1985. Defendant waived an updated report and now argues that his trial counsel improperly waived his right to an updated report. This argument is without merit. The report relied upon by the trial court at sentencing was only four months old.

Defendant's reliance on *People v. Harris* (1985), 105 Ill. 2d 290, 473 N.E.2d 1291, is misplaced. In *Harris*, the court held that in a felony case, a presentence investigation report is mandatory and cannot be waived by a defendant unless both parties have agreed to a sentence. (105 Ill. 2d 290, 299, 473 N.E.2d 1291; Ill. Rev. Stat. 1985, ch. 38, par. 1005—3—1.) *Harris* is easily distinguished because there was no presentence report whatsoever. Here, defense counsel exercised his judgment in waiving an updated report where there was no new information available which would have aided the judge in sentencing.

 Defendant next argues that the trial court erred in sentencing because he relied on a finding of delinquency on a murder charge based upon the State's oral representations. The record shows that the charge was properly documented shortly after sentencing and was included in the record within 30 days of final disposition. (See 87 Ill. 2d 605(b)(2); Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(c) (court retains jurisdiction to alter sentence 30 days after sentence is imposed).) There was no indication that undue weight was given to defendant's juvenile delinquency background. Therefore, there was no prejudicial error.

## V

 Defendant argues that the court committed reversible error in appointing new counsel during post-trial motions because a conflict of interest existed when the court appointed two assistant public defenders to represent defendant on allegations of ineffectiveness of two assistant public defenders from the Multiple Defendant Unit.

Both Adams and his newly appointed counsel argued defendant's post-trial claim of ineffectiveness of trial counsel. The court denied defendant's motion, finding that an active and intelligent defense was presented. The newly appointed public defenders were told to advise the court if any legal or actual conflict existed. They failed to do so.

Defendant relies on *People v. Smith* (1967), 37 Ill. 2d 622, 230 N.E.2d 169, to support his claim. He asserts that a *per se* rule of conflict of interest must be applied here. We reject this contention. Rather than applying a *per se* rule, thereby disqualifying an entire public defender's office whenever one of its members is confronted with a conflict, a case-by-case inquiry is appropriate. (*People v. Miller* (1980), 79 Ill. 2d 454, 404 N.E.2d 199.) There has been no showing of any facts peculiar to this case to justify the appointment of counsel other than the public defender. (79 Ill. 2d 454, 462, 404 N.E.2d 199.) Moreover, no conflict of interest existed.

In consideration of the foregoing, we affirm and remand for consideration by the circuit court defendant's claim of juror selection discrimination. In the absence of such a finding, the convictions and sentences stand affirmed. Should the circuit court find an improper use of the State's peremptory challenges, it is directed to vacate the convictions and sentencing and grant defendant a new trial.

In the absence of a finding of improper use of the State's peremptory challenges, we grant the State's request that defendant be assessed $75 as costs for its defense of this appeal and incorporate it as part of our judgment. *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319; *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194.

Affirmed in part; remanded in part with directions.

SCARIANO, P.J., and HARTMAN, J., concur.