THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAYMOND DOTSON, Defendant-Appellant.

First District (2nd Division)   No. 1—92—0625

Opinion filed May 3, 1994.

Susan Davis Brunner, of Winnetka, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Laura L. Morrison, and Rogelio Pena, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McCORMICK delivered the opinion of the court:

After a bench trial, defendant was convicted of residential burglary of the home of Arlene Pierson and Alan Morrison and sentenced to five years' imprisonment. Defendant contends that (1) he was not proved guilty beyond a reasonable doubt, where the sole evidence against him was fresh fingerprints found in the victims' home; (2) the variance between the complainant named in the information and the evidence presented at trial did not fully apprise him of the charge against him, and thus, did not allow him to adequately prepare a defense to the charge; and (3) the trial court abused its discretion in refusing to grant defendant a one-day continuance of the trial in order to subpoena witnesses pursuant to section 114—4 of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1991, ch. 38, par. 114—4 (now 725 ILCS 5/114—4 (West 1992)).) We affirm.

In the early morning hours of April 19, 1991, the home of Arlene Pierson and Alan Morrison at 8020 South Normal Street, Chicago, Illinois, was burglarized. Various items of personal property were taken from the premises. A Chicago police department technician removed a pair of fresh fingerprints from some drinking glasses in the kitchen at the scene of the burglary. Subsequently, it was determined that the fingerprints matched defendant's.

On August 23, 1991, defendant was arrested and charged with the burglary.

Morrison, a handyman by day who worked as a driver for a livery service in the evening, testified at trial that he checked on his residence at 8020 South Normal Street at approximately 12:30 a.m. on April 19, 1991. Morrison, Pierson and their three children resided at this location. However, because a sexual assault had occurred there weeks earlier, Pierson and the children slept at her sister's house, some blocks away.

When Morrison checked the house, nothing appeared unusual. He viewed the house from a distance of approximately 15 feet. No windows were broken and the burglar bars on the side and rear doors of the house were intact. Morrison had also been in the house earlier in the day, on April 18, 1991, and noticed nothing unusual. The 25-inch television, the VCR and the microwave on the countertop in the kitchen were in their normal positions. A coffee maker and a few

dishes were on top of the microwave. The dishes were washed and there were drinking glasses drying on top of and around the microwave.

Pierson discovered that the residence had been burglarized and informed Morrison of this by telephone. Morrison arrived at the house at approximately 9 a.m. The basement door was unlocked, but the bars and lock on the front door were still intact. When Morrison unlocked the front door (which is actually a side entrance) he found the house in disarray and, in the kitchen, found that the drinking glasses had been moved aside, presumably to gain access to the microwave.

In May, the police showed Morrison a photograph of defendant. Morrison told the police that he did not know defendant but had seen him around the neighborhood.

Officer Alfred Pirolli, an evidence technician with the Chicago police department, testified that he dusted the items that the victims indicated had been moved for fingerprints. The latent fingerprints he removed from the drinking glasses were fairly fresh because the prints "came up readily" when dusted. On cross-examination, Pirolli testified that he got three "lifts" (latent fingerprints) off the drinking glasses. The glasses themselves were clean and dry. Even though the prints were fresh, Pirolli could not say exactly what time the prints were placed on the glasses.

Officer Thomas Krupowicz, a latent prints technician with the Chicago police department for 20 years, stated that in order to have a positive match for a fingerprint, 8 to 10 characteristics of the latent fingerprint must match a criminal suspect's inked fingerprint impression. Krupowicz, comparing defendant's inked prints to those lifted off the drinking glasses, found over 20. In Krupowicz's expert opinion, the latent fingerprints lifted off the drinking glasses matched defendant's inked fingerprint card.

The trial court found defendant guilty of residential burglary, determining that the evidence of crime was "overwhelming" and that there was the "unexplained presence of the defendant's print[s] on the glass in the position where the microwave was removed." Defendant's motion for a new trial was denied.

■ Defendant's first argument is that the fingerprint evidence was not sufficient to find defendant guilty of burglary beyond a reasonable doubt. Defendant contends that this is especially true where the State's witnesses, Alan Morrison and Detective Spencer, were not credible witnesses.

The crime of burglary may be proven by circumstantial evidence. (*People v. Richardson* (1984), 104 Ill. 2d 8, 13, 470 N.E.2d 1024.)

Circumstantial evidence is generally sufficient to support a conviction and the trier of fact need not search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. *People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344.

Fingerprint evidence is circumstantial evidence. In order to sustain a conviction based on such evidence, the fingerprints must have been found in the immediate vicinity of the crime under such circumstances as to establish beyond a reasonable doubt that the fingerprints were impressed at the time the crime was committed. *People v. Rhodes* (1981), 85 Ill. 2d 241, 249, 422 N.E.2d 605.

In the case at bar, defendant's fresh fingerprints were found at the scene of the crime on drinking glasses that had previously rested on top of the victims' microwave that was stolen in the burglary. The evidence showed that the crime occurred in the early morning hours of April 19, 1991, after the victim, Alan Morrison, drove by to check on his house. Morrison was not acquainted with defendant and did not invite him into his house. Defendant's conviction for burglary based on the fingerprint evidence found here was based on the reasonable inference that the prints were impressed at the time of the commission of the offense.

Defendant's contention that evidence did not show that the prints were impressed on April 19, 1991, rather than two or three days before, is without merit. In *Rhodes*, the officer who removed the latent prints from the scene of the crime, like Officer Pirolli in this case, was unable to say whether latent fingerprints, found on a piece of glass, were impressed on the day of the burglary. (*Rhodes*, 85 Ill. 2d at 248.) Our supreme court found nonetheless that where there was no question about the chain of custody and the print involved was fresh, the evidence indicated "that [the fingerprint] was more probably left at the time the offense was committed rather than at some other time." *Rhodes*, 85 Ill. 2d at 250.

Likewise in the case at bar, there was no issue regarding the chain of custody of the fingerprint evidence. Officer Pirolli testified that when the glasses were dusted, the prints readily appeared. Those prints matched the inked prints of defendant's fingerprint card. The evidence was sufficient to establish defendant's guilt beyond a reasonable doubt.

Furthermore, the record does not support defendant's contention that Morrison was not a credible witness. The law is well settled that it is a function of the trier of fact to determine the credibility of witnesses and to accord the weight to be given their testimony and the inferences to be drawn therefrom. (*People v. Puente* (1984), 125 Ill. App. 3d 152, 157, 465 N.E.2d 682.) Defendant's theory of innocence

rested on the assertion that he was "set up" by the victims because the victims needed the money. That assertion was denied by Morrison. Defendant presented no other evidence to impeach the victim's statement. Defendant's belief that Morrison's testimony was "impeached" rests upon the fact that Morrison testified that he called the police at 9:30 a.m. but that Officer Woodson, one of the officers who responded to the call, testified that he arrived at the victims' home at 1:20 p.m.; that Morrison told Officer Woodson that some things were rented but not others; and that Morrison did not report his VCR missing to the officers at the scene.

We have held that "[a] complainant's testimony does not have to be unimpeached, uncontradicted, crystal clear or perfect to be clear and convincing." (*People v. Watkins* (1992), 238 Ill. App. 3d 253, 257, 606 N.E.2d 254.) A complainant's story may be clear and convincing as long as the discrepancies do not detract from the reasonableness of the story. A reviewing court will not overturn a conviction unless the evidence is so improbable as to raise a reasonable doubt as to guilt. *Watkins*, 238 Ill. App. 3d at 257.

■ We do not believe that any discrepancies in the complainant's account of the facts detract from the reasonableness of that account. It is not so improbable that a burglary victim, returning to an overturned and completely disordered house, might fail to report all the items missing when first questioned by the police. Moreover, Officer Woodson testified that it was his custom to tell burglary victims to report missing items later.

Even more puzzling is defendant's contention that Detective Spencer was an "incredible" witness. Detective Spencer testified on direct examination that he was assigned to the investigation of this case and that on August 23, 1991, he arrested defendant at defendant's residence. On cross-examination, Spencer stated that the case was assigned to his division on April 23, 1991, but that his part in the investigation only involved assisting in defendant's arrest. Officer Zeszutko, Spencer's partner, made the actual arrest; Spencer was in the rear alley of defendant's home in order to block defendant's possible escape. It is based on this cross-examination testimony that defendant contends that Detective Spencer was not a credible witness.

Inconsistency in the testimony of a police officer does not establish that such testimony, viewed as a whole, is inherently flawed. (*People v. Curtis* (1967), 90 Ill. App. 2d 231, 232, 232 N.E. 457.) The responses of Detective Spencer, elicited on cross-examination, do not raise a reasonable doubt as to defendant's guilt (*Watkins*, 238 Ill. App. 3d at 257), and Detective Spencer's testimony did not overcome the evidence of defendant's guilt.

■ Defendant next argues that the variance between the complainant named in the information, Arlene Pierson, and the evidence presented at trial prejudiced him in the presentation of his case and denied him a fair trial.

Variances between the allegations of a charge and the evidence presented at trial are limited to the pleading of the essential elements of the crime and the proof. (*People v. Bristow* (1972), 8 Ill. App. 3d 805, 808, 291 N.E.2d 189.) The variance must in some way mislead the defendant in the preparation of his defense or expose him to double jeopardy. (*Bristow*, 8 Ill. App. 3d at 808.) Where the offense involves the property of another, a variance between the allegations of ownership and proof is not fatal where the evidence shows the rights of possession and ownership in some person other than the defendant. *Bristow*, 8 Ill. App. 3d at 808.

Defendant argues that because the information stated that Arlene Pierson, Alan Morrison's fiancee, was the complaining witness and the owner of the premises, defense counsel prepared to cross-examine Pierson about alleged amorous affairs and the circumstances behind her vacating the home. Defendant argues that he was "surprised" when the State failed to call Pierson as a witness. The record reveals that Pierson left with her fiance, Morrison, after the latter finished testifying.

We find defendant's argument to be without merit. The State clearly informed defendant, in its answer to discovery, that it may call Alan Morrison as a witness. It is not incumbent upon the State to call every witness to a crime to sustain its burden of proof. (*Puente*, 125 Ill. App. 3d at 157.) The State was not required to call Arlene Pierson if it could sustain its burden without her testimony.

We note that our supreme court addressed a similar issue as the case at bar in *People v. Rothermel* (1982), 88 Ill. 2d 541, 431 N.E.2d 378. In *Rothermel*, defendant was convicted of burglary. The bill of indictment charged that defendant " 'committed the offense of Burglary in that said defendant did knowingly without authority enter into the residence building of Barbara Goldsberry and Loretta Isaacs, with the intent to commit therein a theft ***.' " (*Rothermel*, 88 Ill. 2d at 543.) However, the residence, in fact, belonged to Opal Dillon, the complaining witnesses' mother. The witnesses were only watching the house during their mother's hospitalization.

The question the court addressed in *Rothermel* was whether the inaccurate allegation of ownership defeated the indictment. (*Rothermel*, 88 Ill. 2d at 545.) The court found that ownership is not an element of the offense of burglary (*Rothermel*, 88 Ill. 2d at 545), and that an inaccurate allegation of ownership did not defeat the

indictment. The court held that while the indictment was "inartfully drafted," the defendant was fully apprised of the charge against him. *Rothermel*, 88 Ill. 2d at 547.

Likewise, in this case the information was also inaccurate in that both Arlene Pierson and Alan Morrison lived at 8020 South Normal. Only Pierson, however, was named as a complainant in the information. However inartfully drafted the information, the State, nonetheless, informed defense counsel in answer to discovery that both Pierson and Morrison lived at 8020 South Normal and that either of the two may be called as a witness. Thus, it is disingenuous for defendant to argue that he was "surprised" that Pierson did not testify.

Moreover, Morrison, like Mrs. Goldsberry in *Rothermel*, possessed a key to the house and his possessions were in the home. The evidence established that defendant had no possessory interest in the property taken. The State was not required to call Pierson, in addition to Morrison, in order for defendant to cross-examine her. We find no evidence in the record to support defendant's contention that defendant was misled by the variance or that the variance denied defendant a fair trial.

■ Defendant's final argument is that the trial court erred in denying a one-day continuance during trial in order to allow defendant to subpoena witnesses. Defendant listed no witnesses in his answer and had none under subpoena. The court denied defendant's motion for a one-day continuance to subpoena police officers and the victim, Arlene Pierson.

At trial, defendant called Officer Woodson, one of the officers called to the scene of the crime. Testifying as an adverse witness, Woodson stated that he could not remember which of the victims had spoken to him, but that they had reported some items stolen but not others, for instance, a bottle of champagne, the VCR and a tool box. He stated, however, that during burglaries, people are often distraught and cannot remember certain things. Therefore, Officer Woodson stated that it was his practice to tell the victims to report stolen items to the police at a later time.

Section 114—4 provides that after trial has begun a reasonably brief continuance may be granted to either side in the interest of justice. (Ill. Rev. Stat. 1991, ch. 38, par. 114—4 (now 725 ILCS 5/114—4 (West 1992)).) Granting or denying a continuance is within the sound discretion of the trial court. (*People v. Timms* (1978) 59 Ill. App. 3d 129, 135, 375 N.E.2d 1321.) When exercising this discretion, the trial court must determine whether a defendant acted diligently in obtaining the witnesses, whether the evidence would be material to the case, and whether, without the evidence, the defendant would

be denied a fair trial. *Timms*, 59 Ill. App. 3d at 135, citing *People v. Robinson* (1973), 13 Ill. App. 3d 506, 510, 301 N.E.2d 55, 57.

The trial court here did not err in denying defendant's motion for a continuance. Defendant's theory of innocence was that he was "set up." When the prosecutor stated that there was no offer of proof, defense counsel said that Pierson's presence was necessary and the testimony regarding a prior crime was admissible to show Pierson's motive for fabricating: that Pierson and Morrison needed money. Defense counsel further argued that Pierson's testimony would show that she and Morrison set defendant up and that was "lying."

However, the evidence does not even scarcely suggest that either victim had any interest in falsely accusing defendant of burglarizing their home, or that either had anything to gain by his conviction. Further, his offer of proof concerning Pierson's testimony indicates no relevant need for her testimony.

Moreover, as the trial court noted during the hearing on defendant's motion for a new trial, even though defense counsel had ample opportunity to subpoena witnesses before trial, defense counsel never so much as asked the prosecutor to keep Pierson in the building so that Pierson might be available to testify. Since both Pierson and Morrison lived in the home, it cannot be said that Pierson's testimony would have materially assisted the prosecution; her testimony about the burglary would have been merely cumulative. Accordingly, we affirm defendant's conviction and sentence.

Affirmed.

DiVITO, P.J., and SCARIANO, J., concur.