THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY JONES, Defendant-Appellant.

First District (1st Division)   No. 1—95—2924

Opinion filed March 9, 1998.

Michael J. Pelletier and Patricia A. Wrona, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Alan J.

Spellberg, and Scott Herbert, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Defendant, Larry Jones, was charged with possession of a controlled substance (14.02 grams of cocaine) with intent to deliver. Following a jury trial, defendant was found guilty as charged and sentenced to 14 years in the Illinois Department of Corrections. On appeal, defendant raises the following issues for review: (1) whether the trial court erred in granting the People's motion *in limine* to prevent the defendant from inquiring into Officer Jose DeJesus' pending indictment; (2) whether the trial court erred in denying defendant's request to issue an *instanter* subpoena for Officer DeJesus; (3) whether the trial court erred in denying defendant's motion for a mistrial; (4) whether defendant was proved guilty beyond a reasonable doubt; and (5) whether the trial court abused its discretion in sentencing defendant to 14 years' imprisonment. For the reasons that follow, we affirm.

At trial, Chicago police officer Angel Lorenzo testified that around 1 p.m. on August 5, 1993, as a result of community complaints about drug dealing in the area of Cortland and Drake Streets, he and his partner, Officer Jose DeJesus, conducted a surveillance of possible narcotics transactions at that location. The officers were in plainclothes. They parked their vehicle a distance away and returned to the scene on foot. Using binoculars from a vacant lot approximately 50 feet away, Officer Lorenzo observed defendant, Lee Baker and a juvenile named Bobby Mackey in the vicinity of 1910 N. Drake. Officer Lorenzo testified that he knew defendant by the nickname "Lunchmeat" from previous encounters.

During the surveillance, Officer Lorenzo observed an individual he would later discover was named Kenneth Marras engage in a brief conversation with defendant Jones then hand defendant an unknown amount of money. Defendant accepted the money and placed it in his pocket. Defendant then looked in the direction of Baker and Mackey, his two assistants, nodded his head and motioned with his right hand. Officer Lorenzo observed Baker cross the street, walk to a fence, bend over and pick up a rock the size of a softball. While Baker was going to the rock, Mackey looked east and west down the alley. Baker next retrieved a plastic bag from under the rock. Baker removed an object from the plastic bag and went back across the street. While Baker was retrieving the object from under the rock, Marras waited next to the defendant. Baker handed the object to Marras, who was still standing next to defendant Jones. Marras then

placed the object in the right front pocket of his pants and walked away.

Officer Lorenzo radioed to the assisting officers the description of the individual he observed purchasing the object, the direction the individual was walking, and that the individual placed the object in his right pants pocket. After Marras left the scene, Officer Lorenzo observed that Baker, Mackey and defendant remained in the area.

A minute or less passed when Officer Lorenzo observed another individual approach defendant. This individual, an Hispanic female, engaged in a brief conversation with defendant Jones then handed defendant an unknown amount of currency. Defendant again turned his head and pointed in the direction of Baker and Mackey. This time, Mackey crossed the street and went to the fence where the rock was located. Mackey lifted the rock, removed the plastic bag from under the rock, removed an object from the plastic bag and replaced the rock. Mackey then crossed the street and handed the object to the Hispanic female. The Hispanic female stood near defendant until she received the object from Mackey.

Officer Margarita Rodriguez testified that she was a few blocks from Officer Lorenzo when she saw an individual who matched the description of Marras. Officer Rodriguez followed Marras for two blocks then ordered him to stop and put his hands in the air. Marras became irate, began to yell profanities and flung his hands in the air. Officer Rodriguez then called for backup over the citywide police radio band. Shortly thereafter, Officer Rodriguez heard sirens, and Officer Gregg Swiderek arrived to assist her. Swiderek patted down Marras and recovered .16 grams of crack cocaine from the right pocket of Marras's pants.

When defendant Jones, Baker and Mackey heard the police sirens, they walked northbound on Drake. Once they left the area, Officer Lorenzo went to the location where the suspected narcotics transactions occurred. Lorenzo looked under the rock and recovered a plastic bag containing 77 packets of cocaine weighing 14.02 grams.

Officer Lorenzo then went to the area of Drake and Armitage, where he last saw defendant. Defendant was inside a clothing store at the time. Lorenzo brought defendant back to the area where the suspected narcotics transactions had occurred. Officer Lorenzo searched defendant once he learned that the other officers had arrested Marras and found a bag of cocaine in the possession of Marras similar to the bags found under the rock. Officer Lorenzo recovered $78 in United States currency from the defendant's pants pocket.

Defendant testified that on August 5, 1993, he went to the area of Cortland and Drake Streets in Chicago, where he saw his friends

Bobby Mackey, Lee Baker and Demetrius Cole. Defendant stated that he had a brief conversation with Cole, shook Cole's hand and went to a clothing store at the corner of Armitage and Drake. Defendant stated that, during his conversation with Cole, Baker was across the street by the rock.

Approximately 15 to 20 minutes later, Mackey, Baker and Cole entered the store. After Cole left the store, Officer Lorenzo went in the store, took defendant outside and told him to lie on the ground. Defendant refused and was handcuffed and arrested.

Defendant also testified that he had never met Officer Lorenzo before. Defendant stated that his nickname was "Pint" rather than "Lunchmeat." Defendant also testified that he received the money that the officers found on him from his fiancee.

Defendant then called Laura Kang, the owner of the clothing store. Ms. Kang testified that defendant came into the store alone but that three or four other males came in later. Ms. Kang stated that defendant had been in her store for 10 to 15 minutes before he was arrested. Ms. Kang further testified that defendant's nickname is "Pint."

The jury found defendant guilty of possession of a controlled substance with the intent to deliver. The trial court then sentenced defendant to 14 years in the Illinois Department of Corrections.

■ Defendant first contends that it was reversible error to grant the State's motion *in limine* concerning inquiry into Officer DeJesus' indictment. Officer DeJesus was indicted on a sexual molestation charge. Anticipating that the defense would question DeJesus about the indictment, the State filed a motion *in limine* requesting that the court bar any inquiry into the indictment. The court granted the motion.

Assuming *arguendo* that defendant had properly preserved the issue, there was no error. Defendant could not have inquired into Officer DeJesus' pending indictment even if he had testified since it was not an actual conviction. A witness may be impeached by attacking his character, but only convictions may be proved for this purpose; proof of arrests, indictments, charges or actual commission of a crime is not admissible. *People v. Franklin*, 167 Ill. 2d 1, 21, 656 N.E.2d 750 (1995).

Defendant argues that the trial court erred in granting the motion *in limine* because Officer DeJesus' credibility was a key factor in the case. However, since Officer DeJesus did not testify at trial, his credibility never became a factor impacting on the trial outcome. The defendant could have called Officer DeJesus as a witness but chose not to do so. The State is not required to call a witness to testify in

order for defendant to have an opportunity to cross-examine the witness. *People v. Dotson*, 263 Ill. App. 3d 571, 576-77, 635 N.E.2d 559 (1994).

■ Defendant's second contention is that it was reversible error for the trial judge to deny the request by the defense for an *instanter* subpoena to command Officer DeJesus's presence at trial and to order the sheriff's department to serve him. Defendant contends that the cross-examination of Officer DeJesus would have lent support to defendant's alibi that defendant had been at the store for some time when the officers arrived. Defendant asserts that this may have been sufficient to raise a reasonable doubt as to defendant's guilt and, as such, denying defendant's request for the *instanter* subpoena violated his right to confront and cross-examine his accuser. In support of this contention, defendant raises many of the same arguments made regarding the trial court's granting of the People's motion *in limine*.

We agree with the trial court that defendant had an ample opportunity to subpoena Officer DeJesus, particularly since the case had been pending since August of 1993. There was no evidence that any investigator for Jones' attorney ever tried to subpoena Officer DeJesus. Furthermore, the defense was on notice that the State would not be calling Officer DeJesus at trial as indicated in the State's motion *in limine*.

We note that the use of subpoenas is a judicial process and the trial judge is granted wide discretion in deciding whether a subpoena should issue. *People v. Walley*, 215 Ill. App. 3d 971, 974, 575 N.E.2d 596 (1991); *United States v. Micklus*, 581 F.2d 612 (7th Cir. 1978). While defendant contends that the cross-examination of Officer DeJesus would have lent support to defendant's alibi, this is conjecture. It could just as easily be said that the fact that Officer DeJesus did not testify was beneficial to defendant's case. Accordingly, we find that the trial court did not err in denying the defense's request for an *instanter* subpoena requiring Officer DeJesus' presence at trial.

■ Defendant's third contention is that it was reversible error for the court to deny the defense motion for a mistrial. In support of this contention, defendant asserts that Officer Lorenzo's testimony that he knew defendant by the nickname "Lunchmeat" was highly prejudicial. Defendant contends that this testimony improperly implied to the jury that defendant had prior drug arrests.

It is not reversible error to call a defendant by his nickname. *People v. Adams*, 156 Ill. App. 3d 444, 450, 509 N.E.2d 482 (1987), *allowed with order*, 119 Ill. 2d 560, 521 N.E.2d 941 (1988); *People v. Travis*, 64 Ill. App. 2d 197, 201, 212 N.E.2d 272 (1965). General

principles of fair play dictate that a nickname that has a pejorative connotation be used sparingly. *People v. Salgado*, 287 Ill. App. 3d 432, 445, 678 N.E.2d 648 (1997); *People v. Murillo*, 225 Ill. App. 3d 286, 294, 587 N.E.2d 1199 (1992). But even when this is the case, it is not improper to allow a defendant to be referred to by his nickname if witnesses knew and identified defendant by that name. *Salgado*, 287 Ill. App. 3d at 445; *Murillo*, 225 Ill. App. 3d at 294.

First, the nickname "Lunchmeat" does not have a pejorative connotation. See *Salgado*, 287 Ill. App. 3d at 445 (holding that in a case involving first-degree murder, the nickname "Bam Bam" did not carry a negative connotation that was immediately recognizable). Further, the nickname "Lunchmeat" does not in any way invoke an association with narcotics usage or drug dealing.

Second, even if the nickname "Lunchmeat" did have some sort of negative connotation, defendant's nickname was used sparingly at trial. Our review of the record indicates that the prosecution raised this issue once at trial for the limited purpose of proving identity. During the direct examination of Officer Lorenzo, the prosecutor asked Officer Lorenzo if he recognized defendant when Officer Lorenzo saw defendant on August 5, 1993. Officer Lorenzo responded that he recognized defendant but knew him by the name "Lunchmeat" rather than the name "Larry Jones." Accordingly, the prosecutor's actual use of defendant's nickname was not excessive.

A trial court's decision on the admission of evidence will not be disturbed unless an abuse of discretion resulting in prejudice to the defendant is clear from the record. *Salgado*, 287 Ill. App. 3d at 445. In this case, Officer Lorenzo's testimony that he knew defendant by the nickname "Lunchmeat" did not improperly imply to the jury that defendant had prior arrests. Consequently, defendant was not prejudiced and the trial court did not err in denying the defense's motion for a mistrial.

Defendant next contends that he was not proved guilty beyond a reasonable doubt. Defendant argues that the State failed to prove him guilty beyond a reasonable doubt of each element of the offense of possession of a controlled substance with intent to deliver. Specifically, defendant contends that the State failed to prove defendant's possession of a controlled substance and defendant's intent to deliver. Defendant maintains that because the cocaine was found beneath a rock in a public area and not found on him, the cocaine was neither in his possession nor under his exclusive control.

■ A challenge to the sufficiency of evidence to support a conviction on appeal will be sustained only if no rational trier of fact could have found that the defendant committed each element of the charged

offense. *People v. Clemons*, 277 Ill. App. 3d 911, 923, 661 N.E.2d 476 (1996). A defendant therefore must show that the evidence of criminal conduct is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt. *Clemons*, 277 Ill. App. 3d at 923. In addition, the evidence at trial must be viewed in the light most favorable to the prosection, and the reviewing court may not substitute its judgment for that of the trier of fact on questions such as weight of the evidence, credibility of witnesses or resolution of conflicting testimony. *People v. Feazell*, 248 Ill. App. 3d 538, 545, 618 N.E.2d 571 (1993).

■ To sustain a conviction for possession of a controlled substance with intent to deliver, the State must prove the following elements: (1) that the defendant had knowledge of the presence of the controlled substance; (2) that the controlled substance was within the immediate control or possession of the defendant; and (3) that the defendant had intent to deliver the controlled substance. *People v. Robinson*, 167 Ill. 2d 397, 407, 657 N.E.2d 1020 (1995).

■ In this case, the trial court instructed the jury that defendant's conviction may be established under a theory of accountability. Under this theory of accountability, the State must prove that defendant, either before or during the commission of the offense and with the intent to promote or facilitate such commission, solicited, aided, abetted, or attempted to aid such other person in the planning or commission of the offense. 720 ILCS 5/5—2(c) (West 1996); *People v. Batchelor*, 171 Ill. 2d 367, 375, 665 N.E.2d 777 (1996).

A defendant's accountability for a criminal offense can be established "from evidence of conduct showing a design on defendant's part to aid in the offense." *People v. Saunders*, 206 Ill. App. 3d 1008, 1014, 565 N.E.2d 183 (1990). In *Saunders*, the defendant and a codefendant attempted to sell cocaine to an undercover police officer. Although the drugs were found on the codefendant's person, both defendants were convicted of possession of a controlled substance. *Saunders*, 206 Ill. App. 3d at 1011-12.

On appeal, the defendant in *Saunders* argued that the evidence did not support his conviction because he never possessed the drugs. Upholding the conviction, the court held that the defendant's conduct supported his conviction on an accountability theory. The court noted that the defendant went to the site of the crime, conversed with a police officer about a price for the drugs, and instructed his accomplice to show the drugs to the police officer. *Saunders*, 206 Ill. App. 3d at 1014-15.

■ Similarly, in the present case, the defendant's conduct was sufficient to establish his accountability for the actions of Baker and

Mackey. First, defendant engaged in a verbal discussion with the potential cocaine buyers and accepted the buyers' money. Second, after these conversations, defendant instructed his accomplices, through nonverbal conduct, to retrieve the cocaine and deliver it to the narcotics buyer. Specifically, upon instruction from defendant, Baker or Mackey would cross the street, retrieve the cocaine from under a rock, and then bring the cocaine back across the street to the buyer. The buyer would give the money to the defendant and then remain standing near the defendant until Baker or Mackey handed the buyer the cocaine. When viewed in a light most favorable to the prosecution, this evidence demonstrated that defendant aided Baker and Mackey in their commission of the offense with the specific intent to facilitate or promote the offense. Therefore, defendant's conviction for possession of a controlled substance with intent to deliver was proper on an accountability theory.

In addition, the State sufficiently proved defendant guilty of each element of the offense of possession of a controlled substance with intent to deliver. The State may establish these elements through circumstantial evidence. *Clemons*, 277 Ill. App. 3d at 923.

■ Defendant contends that because the cocaine was located under a rock in a public place, no evidence directly established defendant's possession or control of the cocaine. Possession or control may be established by actual possession or by constructive possession. *People v. Brown*, 277 Ill. App. 3d 989, 997, 661 N.E.2d 533 (1996). A defendant has constructive possession of drugs where there is no actual control of the drugs but where defendant intends to and has a capacity to maintain control over them. *People v. Eiland*, 217 Ill. App. 3d 250, 260, 576 N.E.2d 1185 (1991).

Furthermore, to prove constructive possession, the State may establish that defendant had control over the premises where the drugs were located, but this is not a prerequisite for conviction. *People v. Adams*, 161 Ill. 2d 333, 344-45, 641 N.E.2d 514 (1994). Our supreme court in *Adams* noted that "not only does a defendant not need to control the premises, he does not even need to have actual, personal, present dominion over the drugs themselves." *Adams*, 161 Ill. 2d at 345. The State need only show that defendant has not abandoned the drugs and no other person has obtained possession of the drugs. *Adams*, 161 Ill. 2d at 345. Therefore, proof that defendant knew the drugs were present and exercised control over them establishes constructive possession. *People v. Smith*, 288 Ill. App. 3d 820, 824, 681 N.E.2d 80 (1997) (defendant constructively possessed drugs through keeping the drugs in a wine bottle cap within a vacant lot).

■ In this case, the defendant had constructive possession of the

77 packets of cocaine found under the rock. Defendant's conduct and the actions of his accomplices support the conclusion that defendant knew where the drugs were located, always intended to maintain control of the drugs, and never abandoned the drugs. Defendant accepted money from cocaine buyers and, through nonverbal conduct, directed Baker and Mackey to retrieve the drugs and deliver them to the potential buyer. Defendant's actions demonstrated that he was in charge of the criminal enterprise and that he had knowledge of and complete control over the cocaine. Consequently, defendant had constructive possession of the cocaine.

Likewise, the jury could have inferred defendant's intent to deliver from his actions on the public street with his accomplices and the cocaine buyers. Once actual or constructive possession is established, the element of intent to deliver can be inferred from the surrounding facts and circumstances absent direct facts which tend to negate intent or which might leave in the mind of the jury a reasonable doubt as to defendant's guilt. *Clemons*, 277 Ill. App. 3d at 923. Here, the jury was presented with evidence of defendant's verbal discussions with the buyers, defendant's acceptance of money, and his nonverbal directions to Baker and Mackey, followed by Baker and Mackey actually handing the cocaine to the buyers, who were waiting next to defendant Jones. Based on this evidence, the jury reasonably could have found that defendant had the requisite intent to deliver the controlled substance. Therefore, viewing the evidence in a light most favorable to the prosecution, we hold that there was an adequate basis for the jury to find that defendant committed the offense of possession of a controlled substance with intent to deliver.

Moreover, the defendant and his accomplices conducted their criminal activity on a public street and hid their cocaine under a rock accessible to the public. A person who sells drugs in a public area is as great a threat to the public welfare as one who chooses to sell drugs within his residence. See 720 ILCS 5/12—4 (West 1996) (enhancing the offense of battery when committed about a public way, public property or public place of accommodation or amusement). The committee comments for the aggravated battery statute note that this type of crime "involves a battery committed under aggravated circumstances from which great harm might and usually does result, and therefore it constitutes a more serious threat to the community than a simple battery." 720 ILCS Ann. 5/12—4, Committee Comments—1961, at 285 (Smith-Hurd 1993).

Similarly, the distribution of drugs in a public way constitutes serious criminal conduct and increases the risk to the public health and safety. In the case at bar, defendant stood outside a residential

building, conducted drug transactions from a public area, and directed his accomplices to retrieve drugs from under a rock across the street. Defendant's conduct was in blatant disregard of the public health and safety and further supports his conviction for possession of a controlled substance with intent to deliver.

Lastly, defendant asserts that the 14-year sentence imposed for possession of a controlled substance with intent to deliver constitutes an abuse of discretion. Defendant contends that he was only 21 years old at the time of the incident, his prior criminal record was nonviolent, and he had a son and fiancee. The People maintain that the trial court did not abuse its discretion and that the court properly considered all factors in aggravation and mitigation in sentencing.

Absent an abuse of discretion, a reviewing court will not disturb a sentence that falls within the statutory limits. See *People v. Streit*, 142 Ill. 2d 13, 18-19, 566 N.E.2d 1351 (1991). In determining an appropriate sentence, the defendant's history, character, rehabilitative potential, the seriousness of the offense, the need to protect society and the need for deterrence and punishment must be equally weighed. *People v. Taylor*, 236 Ill. App. 3d 223, 232, 603 N.E.2d 611 (1992). A reviewing court must not substitute its judgment for that of a sentencing court merely because it would have weighed the factors differently. *Streit*, 142 Ill. 2d at 19.

In this case, defendant was convicted of a nonprobationable Class 1 felony, which, under the applicable statute, provided a prison term of at least 4 years and no more than 15 years. 720 ILCS 570/401(c)(2) (West 1996); 730 ILCS 5/5—8—1(a)(4), 5—5—3(c)(2)(D) (West 1996). Thus, the sentence falls within the statutory guidelines.

Further, our review of the record clearly demonstrates that the trial judge thoroughly considered the mitigating and aggravating factors before he reached his sentencing decision. The trial court specifically noted that defendant had two prior felony convictions and committed a subsequent drug offense while out on bond where he was found to be in possession of 11 packets of cocaine and $1,000 cash. Accordingly, the trial court did not abuse its discretion by sentencing defendant to 14 years in the Illinois Department of Corrections.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RAKOWSKI and TULLY, JJ., concur.