2024 IL App (1st) 231000-U

FOURTH DIVISION
Order filed: October 17, 2024

No. 1-23-1000

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10CR1248302 |
| | ) | |
| MARCOS LUNA, | ) | Honorable |
| | ) | Angela M. Petrone, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1     *Held*: The dismissal of the defendant's postconviction petition at the second stage was affirmed over his contention that he made a substantial showing that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on direct appeal.

¶ 2     Following a bench trial in June of 2012, the defendant, Marcos Luna, was convicted of possession of 900 or more grams of a controlled substance with intent to deliver. 720 ILCS 570/401(a)(2)(D) (West 2012). The defendant filed a direct appeal, alleging that trial counsel provided ineffective assistance of counsel by depriving him of his right to testify. This court

affirmed. *People v. Luna*, 2014 IL App (1st) 122838-U. In June of 2015, the defendant filed a *pro se* motion for postconviction relief, which raised, among other issues, a claim that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence that the defendant had constructive possession of a controlled substance. After the petition fell off call and was reinstated and docketed, the State filed a motion to dismiss the petition, which was granted. The defendant now appeals. As the defendant has not a made a substantial showing that he was prejudiced by appellate counsel's failure to challenge the sufficiency of the evidence on direct appeal, we affirm.

¶ 3    The evidence at trial was previously set forth in our order on the defendant's direct appeal. *See Luna*, 2014 IL App (1st) 122838-U, ¶¶ 4-12. The defendant's bench trial was conducted simultaneously with the jury trial of co-defendant Mayra Sanchez-Espinoza. Ricardo Flores was also charged as a co-defendant, but his case was severed from the trial of the defendant and Sanchez-Espinoza.

¶ 4    At trial, police officer Edison Cevallos testified that on June 21, 2010, Flores phoned him to arrange a meeting at 2 p.m. to purchase 2 kilograms of cocaine for $32,000 each. Cevallos drove an unmarked car to the arranged location at Milwaukee and Western Avenues in Chicago. He stayed there until about 2:35 p.m., when Flores phoned him to advise that he was late and that he would call again to inform Cevallos where they would meet. Flores called Cevallos at about 3 p.m. and told him to go to a restaurant nearby on Milwaukee Avenue. Cevallos went there, parked nearby, and walked toward the restaurant. On the way, Flores met Cevallos and they exchanged greetings and "small talk." Cevallos saw the defendant and Sanchez-Espinoza standing near a parked white car near the entrance to the restaurant parking lot. As Flores and Cevallos approached

them, the defendant and Sanchez-Espinoza went to the white car, the former to the front and the latter to the back near the trunk. Flores introduced Cevallos to the defendant, who then asked "are you ready?" Cevallos said that he was ready, and the defendant summoned Sanchez-Espinoza and told her "go show them." As she entered the white car, the defendant told Cevallos to "go check them out." With both Cevallos and Sanchez-Espinoza inside the white car, she produced a green brick-like object marked "1060" from behind the driver's seat and gave it to him. He asked if he could test it, and she nodded. He cut into the brick, found it to contain "high quality" cocaine, and handed it back to her. Cevallos went to the defendant and expressed his approval of the cocaine, to which the defendant replied "bring the money." As Cevallos walked away from the defendant, he phoned other officers to report a successful cocaine purchase.

¶ 5    On cross-examination, Cevallos testified that Flores had not mentioned during their first telephone call that someone other than himself was supplying the cocaine, so Cevallos believed he was meeting Flores alone. He had not spoken with the defendant or seen him before arriving at the restaurant, nor did he see the defendant driving the white car (or any other car) or inside the white car.

¶ 6    Officer Robert Dembski testified that he worked with Cevallos on the day in question as a surveillance officer. Therefore, he came to the Milwaukee and Western intersection before Cevallos arrived. However, when Cevallos relayed that the meeting location had been changed, Dembski went to that location, arriving before Cevallos. Flores then arrived, and Dembski advised the other officers of this. When Flores met Cevallos, the restaurant was between them and Dembski so he moved to have a better view. He was driving to a new location when he saw Flores and Cevallos approaching the restaurant parking lot and saw the defendant and Sanchez-Espinoza

standing near the parking lot entrance; he did not see either the defendant or Sanchez-Espinoza before this. Flores and Cevallos approached a parked white car, with the defendant approaching the front and Sanchez-Espinoza approaching the rear of the same car. Dembski then lost sight as he drove on, though other surveillance officers were describing events on the radio. First, it was relayed that Cevallos "met with them" in the white car, then an officer relayed that Cevallos reported a successful purchase and directed officers to "move in." By now, Dembski had driven to a location where he could see the scene again, and he saw an officer approach the scene and then did so himself. Flores fled with an officer in pursuit, while the defendant and Sanchez-Espinoza remained near the white car. The defendant briefly backed away slowly from Dembski before he and Sanchez-Espinoza were arrested. Dembski searched the white car and found a bag behind the driver's seat with two brick-like objects wrapped in green plastic, one marked 1060 and the other marked 1066. The bag was visible as soon as Dembski entered the vehicle. He believed the bricks to each be a kilogram of cocaine, with the numbers signifying their weight in grams. He recovered and later inventoried the bag and two bricks. Forensic chemist LeAnn McDowell testified that when she weighed and tested the inventoried "bricks," they weighed 983 grams and 968.5 grams and both contained cocaine.

¶ 7    After the State rested, the defendant moved for a directed verdict, which was denied. The trial court found that there was evidence that the defendant "had participated in a conversation with an undercover officer to sell to the undercover officer cocaine that he, [the defendant], directed Ms. Sanchez-Espinoza to show the narcotics to the officer, and then asked an officer for money." The defendant waived his right to testify and did not present any evidence.

¶ 8       The trial court found the defendant guilty, finding that all three defendants "each played a role in possessing two kilograms, two bricks of cocaine over 900 grams each, with intent to deliver them for $32,000 each to an undercover officer on June 21, 2010." While Flores arranged the deal with the officer, he introduced the officer to the defendant. The defendant told Sanchez-Espinoza to "show them to him" and then, after she showed the officer the "bricks" and the officer examined one, told the officer to "go for the money." The trial court concluded that the defendant's constructive possession and intent to deliver the cocaine were proven even though there was no evidence he directly handled the cocaine.

¶ 9       The defendant filed a post-trial motion which, in relevant part, challenged the sufficiency of the evidence that the defendant constructively possessed the cocaine. The trial court denied the motion, reiterating that the defendant's statements and actions showed that he constructively possessed the cocaine. The trial court sentenced the defendant to 20 years in the Illinois Department of Corrections.

¶ 10      The defendant filed a direct appeal, alleging that trial counsel provided ineffective assistance of counsel by depriving him of his right to testify. This court affirmed, finding that the defendant was repeatedly admonished by the trial court regarding his right to testify and there was no evidence that the decision not to testify was made by trial counsel, rather than the defendant himself. *Luna*, 2014 IL App (1st) 122838-U, ¶ 18.

¶ 11      The defendant filed a *pro se* postconviction petition in June of 2015. The defendant's petition raised, in relevant part, a claim that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence that he constructively possessed the cocaine on direct appeal. The petition fell off call and was reinstated and docketed in 2017, and the circuit court

appointed counsel. After numerous continuances, postconviction counsel filed a Rule 651(c) certificate and did not amend the defendant's original petition. *See* Ill. Sup. Ct. R. 651(c) (eff. Jul. 1, 2017). The State filed a motion to dismiss the petition, which the circuit court granted on March 24, 2023, in a written order. Regarding the ineffective assistance of appellate counsel claim, the circuit court concluded that the defendant failed to show he had a viable reasonable doubt argument that could have been raised on appeal, and therefore failed to show he was prejudiced by appellate counsel's failure to raise such an argument.

¶ 12    The defendant's sole argument on appeal is that the circuit court erred in dismissing his postconviction petition at the second stage when he made a substantial showing that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on direct appeal.

¶ 13    The Postconviction Hearing Act allows a defendant to collaterally attack a conviction by asserting that it resulted from a "substantial denial" of their constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2022). A post-conviction petition is not an appeal from the conviction judgement, but rather a collateral attack on the trial court proceedings. *People v. Tate*, 2012 IL 112214 ¶ 8. At the second stage of a postconviction hearing, the issue is whether the allegations in the petition and any attached exhibits, taken as true, are sufficient to set forth a substantial showing of a constitutional violation and entitle the petitioner to relief if proven. *People v. Sanders*, 2016 IL 118123, ¶ 31; *People v. Domagala*, 2013 IL 113688, ¶¶ 33–35. The dismissal of a postconviction petition at the second stage without an evidentiary hearing is reviewed *de novo*. *Sanders*, 2016 IL 118123, ¶ 31.

¶ 14    Typically, a challenge to the sufficiency of the evidence is not properly raised in a postconviction petition, but an exception is when a petitioner claims that appellate counsel was

ineffective for failing to raise the issue on direct appeal. *People v. Blair*, 215 Ill.2d 427, 450-51 (2005). To establish a claim for ineffective assistance of appellate counsel, "a defendant must show both that appellate counsel's performance was deficient and that, but for counsel's errors, there is a reasonable probability that the appeal would have been successful." *People v. English*, 2013 IL 112890, ¶ 33 (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "A 'reasonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.'" *People v. Simpson*, 2015 IL 116512, ¶ 35 (quoting *Strickland*, 466 U.S. at 694). "Appellate counsel is not obligated to raise 'every conceivable issue on appeal,' but rather is expected to 'exercise professional judgment to select from the many potential claims of error that might be asserted on appeal.'" *English*, 2013 IL 112890, ¶ 33 (quoting *People v. Williams*, 209 Ill.2d 227, 243 (2004)). The viability of a claim that allegedly should have been raised by appellate counsel is examined based on "the state of the law at the time of the direct appeal". *Id.*, ¶ 34.

¶ 15    The defendant argues that appellate counsel was ineffective for failing to raise a challenge to the sufficiency of the evidence on direct appeal. However, as there is no reasonable probability that such an argument would have been successful on direct appeal, he cannot show that he suffered any prejudice from appellate counsel's failure to raise such an argument.

¶ 16    Due process requires the State to prove every element of the offense charged beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 275 (2004). The standard for a challenge for the sufficiency of the evidence on direct appeal is whether, viewing the evidence in the light most favorable to the State, a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). A conviction will not be

overturned "unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 17   To sustain a conviction for possession with intent to deliver, the State must prove "(1) that the defendant had knowledge of the presence of the controlled substance; (2) that the controlled substance was within the defendant's immediate control or possession; and (3) that the defendant had the intent to deliver the controlled substance." *People v. Burks*, 343 Ill. App. 3d 765, 768 (2003) (citing *People v. Jones*, 295 Ill. App. 3d 444, 452 (1998)). "Possession may be actual or constructive and is often proved with circumstantial evidence." *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 27. To show constructive possession, the State must show the defendant "had knowledge of the presence of the contraband and had immediate and exclusive control over the area where the contraband was found." *People v. Love*, 404 Ill. App. 3d 784, 788 (2010). However, the fact that a defendant shares control over the contraband with another does not defeat constructive possession. *People v. Givens*, 237 Ill.2d 311, 337-38 (2010).

¶ 18   The defendant concedes that the State provided evidence of the first and third elements at trial, but argues the State failed to show he constructively possessed the cocaine there was no evidence that he had control of the cocaine or the vehicle where the cocaine was located. The defendant focuses on the lack of direct evidence tying him to the vehicle but ignores the wealth of circumstantial evidence tying him to both the vehicle and the cocaine. Both the defendant and Sanchez-Espinoza were observed outside the vehicle where Cevallos was led to make a drug transaction by Flores. Flores introduced Cevallos to the defendant, who then directed Sanchez-Espinoza to retrieve the cocaine from the vehicle and told Cevallos to follow to "check them out". After Cevallos was shown the cocaine, the defendant requested payment.

¶ 19    While there was no direct evidence that the defendant handled the cocaine, entered the vehicle, or owned the vehicle, the circumstantial evidence was more than sufficient to show that the defendant exercised control over both the cocaine and the vehicle. The defendant's statements and actions suggest he exercised control over the cocaine, as he directed Sanchez-Espinoza to show Cevallos the cocaine, then requested payment once Cevallos was given the cocaine. *See Jones*, 295 Ill. App. 3d at 453-54 (evidence sufficient to show constructive possession when defendant received payment, then directed two co-defendants to retrieve cocaine from under a nearby rock).

¶ 20    Existing law at the time of the defendant's direct appeal would have rendered any challenge to the sufficiency of the evidence meritless. For example, in *Burks*, 343 Ill. App. 3d at 768, the defendant was observed taking money from a buyer of cocaine, then directed the buyer to an accomplice who retrieved the cocaine behind a garbage can approximately 20 feet away from the defendant. The court found the evidence sufficient to show the defendant constructively possessed the cocaine, noting "[the defendant's] subtle act of pointing his buyers in the direction of the drugs for which they had already paid him shows that he had knowledge of the location of the drugs, intended to maintain control of them, and never abandoned them. In other words, he had constructive possession of the drugs." *Id.* at 770. Similarly in this case, the evidence showed that the defendant knew the cocaine was in the car, directed Sanchez-Espinoza and Cevallos to the car to retrieve it, then requested payment for the cocaine. Even if the defendant did not handle the cocaine directly or enter the vehicle to retrieve it, the circumstantial evidence was sufficient to show he constructively possessed the cocaine.

¶ 21    The defendant argues that *People v. Scott*, 367 Ill. App. 3d 283, 286 (2006), supports an argument that he lacked control over the vehicle and therefore did not constructively possess the cocaine. However, *Scott* is distinguishable. In *Scott*, a co-defendant retrieved a small package of cocaine from a locked mailbox for which the co-defendant had the key. *Id.* at 284. The defendant was handed the small package, and both the defendant and co-defendant walked away. *Id.* When both were arrested, officers opened the mailbox and found a larger package of cocaine. *Id.* On appeal the defendant argued the evidence was insufficient to show he constructively possessed the larger package of cocaine, as he did not have access to the mailbox where the larger package was found since only the co-defendant had a key to the mailbox. *Id.* at 285. The appellate court agreed, finding was no evidence that the defendant had access to the mailbox where the larger package was found and there was limited evidence that the defendant resided at the apartment. *Id.* at 286. The appellate court reversed and remanded for resentencing based on the defendant's admitted possession of the smaller package of cocaine. *Id.* at 286-87.

¶ 22    Unlike in *Scott*, in the present case there was sufficient circumstantial evidence to show that the defendant exercised control over the vehicle and the cocaine inside the vehicle. When Cevallos arrived, the defendant directed Sanchez-Espinoza to enter the vehicle to retrieve the cocaine and told Cevallos to follow Sanchez-Espinoza. While the defendant argues the evidence showed that only Sanchez-Espinoza was permitted to enter the vehicle, the trial court could have, and did, draw the equally plausible inference that the defendant had at least equal access to the cocaine in the vehicle but directed Sanchez-Espinoza to retrieve it. The circumstantial evidence showed that the defendant exercised control over the vehicle and the cocaine by virtue of his statements and actions directing the transaction.

¶ 23　The defendant attempts to distinguish *Jones*, 295 Ill. App. 3d at 453-54, and *People v. Moore*, 365 Ill. App. 3d 53, 61 (2006), relied upon by the State, by arguing that both cases involved an accountability theory which the State did not rely on in the present case. The defendant argues that the holdings on constructive possession in those cases were "heavily influenced by the language of accountability". Regardless of the language used, both cases found that evidence very similar to the present case was sufficient to show constructive possession. *See Moore*, 365 Ill. App. 3d at 61 (finding evidence sufficient to show constructive possession when defendant accepted money from a buyer and directed an associate to retrieve drugs from a leaf pile); *Jones*, 295 Ill. App. 3d at 453-54. Both cases involve a similar factual scenario to the present case, where the defendant greets a prospective buyer, directs them to an associate in a nearby location to recover the drugs, and accepts payment for the drugs. This evidence is sufficient to show the defendant's constructive possession of the drugs independent of any accountability for the conduct of co-defendants.

¶ 24　The defendant also argues that this case is distinguishable from cases such as *Jones* and *Moore* because the cocaine was found in a vehicle, rather than on real property. The defendant argues that the State was required to provide evidence showing his connection to the vehicle, relying on *People v. Bogan*, 2017 IL App (3d) 150156, ¶ 42. *Bogan*, a Third District case decided after the defendant's direct appeal, involved the possession of a firearm which was found in a vehicle registered to the defendant, but the defendant was not seen in or near the vehicle, and the defendant testified at trial that the vehicle was used by someone else. *Id.* ¶¶ 4-5, 8, 14-16. While acknowledging the evidence showing control over the vehicle was not overwhelming, the *Bogan* court ultimately found the evidence sufficient to show control and constructive possession of the

firearm in the vehicle. *Id.* ¶¶ 31-36, 48. *Bogan* does not support an argument the evidence was not sufficient in this case. In the present case, the defendant was observed immediately outside the vehicle in question and his statements and actions clearly demonstrated he had knowledge of the cocaine's presence inside the vehicle and that he controlled the cocaine by directing the transaction. While the defendant makes much of the fact that there was no direct evidence, he had control over the vehicle and insists that the evidence showed only Sanchez-Espinoza had control over the vehicle since she entered the vehicle, a reasonable trier of fact could have and did conclude otherwise based on the defendant's statements directing the transaction and his presence outside the unlocked vehicle where the cocaine was found.

¶ 25     As the evidence at trial was sufficient to convict the defendant under existing law at the time of his direct appeal, there was no reasonable probability of success of a challenge to the sufficiency of the evidence and the defendant cannot show he was prejudiced by appellate counsel's failure to raise such an argument. *See People v. Young*, 2022 IL App (1st) 210534, ¶ 58 (finding no prejudice when "well-settled law dictates that the evidence adduced at defendant's trial was legally sufficient to convict him."). As there is no prejudice, we need not consider whether appellate counsel's performance was deficient. *People v. Graham*, 206 Ill. 2d 465, 476 (2003) ("[I]f an ineffective-assistance claim can be disposed of because the defendant suffered no prejudice, we need not determine whether counsel's performance was deficient."). Therefore, we affirm the second stage dismissal of the defendant's postconviction petition.

¶ 26     Affirmed.